2022 IL App (1st) 211286

First District
Third Division
September 7, 2022

No. 1-21-1286

|  |  |  |
|---|---|---|
| | ) | |
| AARON POTEK, ADINA KLEIN, STEPHEN MICHELINI, and LUKE SEQUEIRA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | No. 17 CH 10507 |
| v. | ) ) | The Honorable |
| THE CITY OF CHICAGO, | ) ) ) | Pamela McLean Meyerson, Judge Presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      Between 2012 and 2014, plaintiffs Rabbi Aaron Potek, Adina Klein, Stephen Michelini, and Luke Sequeira all received "Administrative Notice[s] of Ordinance Violation[s]" (violation notices) from the City of Chicago (City) for using cell phones while driving, a violation of a City ordinance. These violation notices were administratively adjudicated by the City's Department of Administrative Hearings (DOAH), and three of the plaintiffs paid their fines, while the fourth never paid. All four plaintiffs had findings of liability entered against them by the DOAH. In 2017, plaintiffs filed suit against the City, alleging that the DOAH lacked subject-matter jurisdiction to adjudicate the ordinance violations and, therefore, the findings of liability against them were void. The City filed a motion for summary judgment, which the circuit court granted, finding that plaintiffs lacked standing to challenge the City's

use of the DOAH to adjudicate the violations. Plaintiffs appeal, and for the reasons that follow, we affirm in part and reverse in part.

¶ 2                                              BACKGROUND

¶ 3                                              *City Ordinance*

¶ 4        Since 2005, the City's traffic code has contained an ordinance prohibiting the use of cell phones while driving. The ordinance at issue provides that "no person shall drive a motor vehicle while using a mobile, cellular, analog wireless or digital telephone." Chicago Municipal Code § 9-76-230(a) (amended Nov. 17, 2021).[1] The ordinance further clarifies that "using" the device includes, but is not limited to, (1) talking or listening to another person on the telephone, (2) text messaging, (3) sending, reading, or listening to an electronic message, or (4) browsing the Internet. *Id.* The prohibition against using such devices does not apply to (1) law enforcement officers and operators of emergency vehicles when on duty and acting in their official capacities, (2) people using a telephone hands-free, (3) people using a telephone to call 911 or other emergency telephone numbers, and (4) people using a telephone while maintaining the motor vehicle in a stationary parked position and not in gear. *Id.* § 9-76-230(b).

¶ 5        A driver who violates section 9-76-230 is subject to a fine between $90 and $500 for each offense. Chicago Municipal Code § 9-4-020 (amended Nov. 5, 2008). If the violation occurs at the time of a traffic crash, the driver may be subject to an additional $500 fine. Chicago Municipal Code § 9-76-230(c) (amended Nov. 17, 2021).

---

[1]The language of section 9-76-230(a) has not changed since 2010, and this language was in effect at the time of all of plaintiffs' alleged violations. See Chicago Municipal Code § 9-76-230(a) (amended at Chi. City Clerk J. Proc. 106597 (Nov. 17, 2010)).

¶ 6                                    *Illinois Vehicle Code*

¶ 7            The use of "[e]lectronic communication devices" is also governed by the Illinois Vehicle Code. 625 ILCS 5/12-610.2 (West 2010). In 2010, the legislature enacted a prohibition against operating a motor vehicle on a roadway while "using an electronic communication device to compose, send, or read an electronic message." *Id.* § 12-610.2(b). An " '[e]lectronic communication device' " was defined to include "a wireless telephone, personal digital assistant, or a portable or mobile computer while being used for the purpose of composing, reading, or sending an electronic message." *Id.* § 12-610.2(a). An " '[e]lectronic message' " was defined to include e-mail, text messages, instant messages, or commands or requests to access the internet. *Id.* Section 12-610.2 included exceptions for (1) law enforcement officers or operators of emergency vehicles while performing their official duties, (2) drivers using such devices for the sole purpose of reporting an emergency situation and continued communication with emergency personnel during the emergency situation, (3) drivers using such devices in hands-free or voice-activated mode, (4) drivers of commercial motor vehicles reading messages displayed on certain permanently installed communication devices, (5) drivers using such devices while parked on the shoulder of a roadway, and (6) drivers using such devices when the vehicle is stopped in traffic and the vehicle is in neutral or park. *Id.* § 12-610.2(d).

¶ 8            In 2014, the legislature expanded the scope of section 12-610.2, amending the statute to provide that a person may not operate a motor vehicle on a roadway "while using an electronic communication device." 625 ILCS 5/12-610.2(b) (West 2014). The amended statute also expanded the list of exceptions to include (1) a driver using two-way or citizens band radio services, (2) a driver using two-way mobile radio transmitters or receivers for licensees of the

3

Federal Communications Commission in the amateur radio service, (3) a driver using an electronic communication device by pressing a single button to initiate or terminate a voice communication, and (4) a driver using an electronic communication device capable of performing multiple functions, other than a handheld wireless telephone or personal digital assistant, for a purpose that is not prohibited by the statute. *Id.* § 12-610.2(d).

¶ 9 Whenever a person is convicted of any offense under the Vehicle Code "or similar offenses under a municipal ordinance" (subject to certain exceptions not relevant in the instant case), the clerk of the court in which such conviction occurs must forward a report of the conviction to the Secretary of State within five days. *Id.* § 6-204(a)(2). These records allow the office of the Secretary of State to perform its duties to cancel, revoke, or suspend drivers' licenses where appropriate. *Id.* § 6-204(a).

¶ 10 *Adjudication of Ordinance Violations*

¶ 11 Under the Illinois Municipal Code, any municipality may provide for a system of administrative adjudication of municipal code ordinances to the extent permitted by the Illinois Constitution. 65 ILCS 5/1-2.1-2 (West 2020). The Illinois Municipal Code, however, defines a " 'system of administrative adjudication' " as the adjudication of any violation of a municipal ordinance except for (1) proceedings not within the statutory or home rule authority of municipalities and (2) "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6-204 of the Illinois Vehicle Code." *Id.*

¶ 12 With respect to the City, the DOAH is responsible for administratively adjudicating certain traffic-related offenses. See Chicago Municipal Code § 9-100-010 (amended Oct. 28, 2015). A person who has received a violation notice has two options: (1) pay the indicated fine or

(2) request an administrative adjudication to contest the charged violation. Chicago Municipal Code § 9-100-050(a) (amended Oct. 27, 2021).[2] If a person requests an administrative hearing, after such hearing, the administrative law officer enters a determination of liability or no liability and that determination is a final determination for purposes of judicial review. Chicago Municipal Code § 9-100-070(d) (amended Oct. 28, 2015); Chicago Municipal Code § 9-100-090(a) (amended Oct. 28, 2015). If a person fails to respond to the violation notice, a determination of liability is entered against him or her.[3] Chicago Municipal Code § 9-100-090(b) (amended Oct. 28, 2015).

¶ 13        The City does not dispute that until August 2015, including during the time of plaintiffs' alleged offenses, violations of section 9-76-230 were administratively adjudicated by the DOAH under these procedures. In February 2015, the plaintiff in a federal lawsuit against the City alleged that the City was not permitted to administratively adjudicate violations of section 9-76-230.[4] In August 2015, "pursuant to the advice of counsel," the City began issuing "Personal Service Citations" for violations of section 9-76-230, which were adjudicated in the circuit court of Cook County instead of in the DOAH, and no longer prosecuted such violations in the DOAH.[5] Additionally, in 2017, the City placed any indebtedness due to violations of the

---

[2]We note that the municipal code in effect at the time of plaintiffs' alleged offenses did not permit violations of section 9-76-230 to be contested through an adjudication by mail. Chicago Municipal Code § 9-100-060(b) (amended at Chi. City Clerk J. Proc. 107294 (Nov. 17, 2010)).

[3]The City's traffic code is silent as to whether payment of the indicated fine without an administrative hearing results in a determination of liability. See Chicago Municipal Code § 9-100-050 (amended Oct. 27, 2021). We note, however, that each of the plaintiffs who prepaid a fine in the instant case had a DOAH "Findings, Decisions & Order" entered against him or her, which reflected a finding of liability and a judgment in the amount of the fine.

[4]The federal lawsuit was subsequently dismissed for lack of standing.

[5]Prior to 2015, the City's traffic code provided that if any violation of section 9-76-230 was subject to the reporting requirements of section 6-204 of the Illinois Vehicle Code (625 ILCS 5/6-204 (West 2010)), the City's corporation counsel "shall institute appropriate proceedings in a court of competent jurisdiction to prosecute such violation." Chicago Municipal Code § 9-76-230(d) (added at Chi. City Clerk J. Proc. 43707 (Nov. 5, 2008)). It is undisputed, however, that the City's general practice for violations of section 9-76-230 was prosecuting them through the DOAH. This subsection of the

ordinance in "Collection Hold" status; while the debts are still owed by the debtors, the City is not restricting any privileges based on the violations.

¶ 14                                  *Plaintiffs' Offenses*

¶ 15       The four named plaintiffs in the instant case all received violation notices for use of a cell phone while driving during the period of time in which violations were adjudicated by the DOAH and took different approaches to addressing the violations.

¶ 16       Plaintiff Luke Sequeira received a violation notice after a police officer stopped his vehicle on May 9, 2012. Sequeira admitted in his deposition that he was holding his cell phone in his hand and talking on it at the time. The violation was scheduled for an administrative hearing at the DOAH on June 8, 2012. He did not appear at the hearing, and the DOAH entered a "Findings, Decision & Order" reflecting a finding of "Default—Liable by prove-up" and imposing a $500 fine. On July 20, 2012, Sequeira appeared at the DOAH and moved to set aside the default; the DOAH entered a "Findings, Decision & Order" granting the motion, vacating the default, and continuing the proceedings to July 30, 2012. On that date, Sequeira appeared at the DOAH and sought another continuance, which was granted. The "Findings, Decision & Order" continued the proceedings to August 27, 2012. Sequeira did not appear before the DOAH on August 27, 2012, and the DOAH entered a "Findings, Decision & Order," which reflected a finding of "Default—Liable by prove-up" and imposed a $500 fine. On November 3, 2012, Sequeira filed a second motion to vacate the default, which was scheduled for hearing on November 17, 2012. He did not appear at the hearing, however, and the DOAH

---

section 9-76-230 was removed in 2015. Chicago Municipal Code § 9-76-230 (amended at Chi. City Clerk J. Proc. 11951, art. X, § 12 (Oct. 28, 2015)).

entered an order striking his motion with prejudice. Sequeira never paid the fine, and the City claims he owes a $500 fine and a $40 administrative fee, plus interest.

¶ 17    Plaintiff Adina Klein received a violation notice after a police officer stopped her vehicle on November 26, 2012. Klein admitted in her deposition that she was using her cell phone while driving at the time. The violation was scheduled for an administrative hearing at the DOAH on January 15, 2013. Klein did not attend the hearing and instead prepaid a $100 fine. The DOAH entered a "Findings, Decisions & Order" on December 8, 2012, which reflected a finding of "Liable—Prepaid."

¶ 18    Klein was again stopped by a police officer on August 5, 2014, where she received another violation notice alleging that she violated the ordinance. As with her previous violation, Klein admitted in her deposition that she was using her cell phone at the time she was driving. The violation was scheduled for an administrative hearing at the DOAH on September 8, 2014. Klein appeared before the DOAH and admitted liability for the violation. The DOAH entered a "Findings, Decisions, & Order" on September 8, 2014, which reflected a finding of "Liable— by plea." She paid a $90 fine, plus a $20 administration fee.

¶ 19    Plaintiff Stephen Michelini received a violation notice after a police officer stopped his vehicle on August 10, 2014. The violation notice alleged that he was using his cell phone while driving, but in his deposition, Michelini disputed that he committed the violation. The violation was scheduled for an administrative hearing at the DOAH on September 3, 2014. Michelini did not attend the hearing and instead prepaid a $100 fine. The DOAH entered a "Findings, Decisions & Order" on August 23, 2014, which reflected a finding of "Liable—Prepaid."

¶ 20    Plaintiff Rabbi Aaron Potek received a violation notice after a police officer stopped his vehicle on September 8, 2014. Potek admitted in his deposition that he was holding his cell

phone in his hand and was talking on it while driving at the time. The violation was scheduled for an administrative hearing at the DOAH on October 24, 2014. Potek did not attend the hearing and instead prepaid a $100 fine. The DOAH entered a "Findings, Decisions & Order" on October 10, 2014, which reflected a finding of "Liable—Prepaid."

¶ 21                                                  *Complaint*

¶ 22        On August 1, 2017, plaintiffs filed a complaint against the City, alleging that the City had improperly adjudicated ordinance violations in the DOAH, rather than in the circuit court. The complaint was amended in December 2017, and it was the amended complaint that was the subject of the motion for summary judgment at issue on appeal. Plaintiffs alleged that section 9-76-230 of the City's traffic code was "similar" to section 12-610.2 of the Vehicle Code. As a result, plaintiffs alleged that the DOAH lacked subject-matter jurisdiction to adjudicate the violations under section 1-2.1-2 of the Illinois Municipal Code, rendering the resulting judgments void *ab initio*. Plaintiffs requested a declaratory judgment that all administrative findings of liability under the ordinance were null and void, and any fines or penalties stemming from those administrative findings were similarly void. Additionally, under the theory of unjust enrichment, plaintiffs sought the return of the fines and penalties they paid to the City.[6]

¶ 23        The City filed an answer and a number of affirmative defenses. As relevant to the instant appeal, the City raised "Unjust Enrichment/Unclean Hands" as an affirmative defense, alleging that plaintiffs would be unjustly enriched if they were permitted to recover against the City, as

---

[6]Plaintiffs' amended complaint also included a number of claims in the alternative, in the event that the circuit court found that violations of the ordinance were not moving violations. When ruling upon a motion to dismiss by the City, however, the court found that they were moving violations and accordingly dismissed the counts which were based on the violations being compliance violations. Plaintiffs did not renew those arguments, and the dismissal of these counts is not at issue on appeal.

plaintiffs admittedly violated the ordinance by using their cell phones while driving. The City also asserted as a counterclaim that, in the event plaintiffs prevailed, the court should find them liable for violations of the ordinance and impose appropriate fines.

¶ 24                              *Motion for Summary Judgment*

¶ 25        After extensive motion practice, including a motion for class certification,[7] the City filed a motion for summary judgment on October 15, 2020. In its motion, the City claimed that plaintiffs lacked standing to file suit, as none of them participated in a DOAH hearing and they were unable to demonstrate that they were injured by the administrative adjudication of their violations. The City additionally claimed that, even if plaintiffs had standing, it was entitled to judgment as a matter of law for several reasons, including that (1) plaintiffs' claims arose out of their admitted illegal conduct in violating the ordinance, (2) the claims of the three plaintiffs who paid their fines were barred by the voluntary payment doctrine, and (3) the claims regarding 2012 violations did not involve an ordinance that was "similar" to an offense under the Vehicle Code at the time. The City further claimed that it was entitled to summary judgment on its counterclaim against plaintiffs Potek, Klein, and Sequeira, as they admitted to violating the ordinance, which established their liability to the City.

¶ 26        On August 19, 2021, the circuit court entered an order granting the City's motion for summary judgment. The court found the City's standing argument dispositive, finding that plaintiffs had failed to establish that their injuries were caused by the DOAH's adjudication of their ordinance violations. The court identified plaintiffs' "injuries" as their out-of-pocket

---

[7]While the motion for class certification was filed prior to the motion for summary judgment, the parties argued both motions at the same time before the circuit court. The circuit court's ruling on the summary judgment motion meant that the motion for class certification was denied as moot, and that ruling is not before us on appeal.

expense to pay the fines. The court further identified the "conduct complained of" as the violations being sent to the DOAH rather than to the circuit court. Consequently, the court found that the proper question was whether plaintiffs were required to render payment for violating the ordinance due to the fact that the violations were adjudicated in the incorrect forum. The court found that they were not, determining that "Plaintiffs paid because the City issued them a ticket for violating the Ordinance, not because of any defect in the procedures reflected on that ticket." The court found that plaintiffs could not demonstrate that their injuries were fairly traceable to the City's conduct in sending the violations to the DOAH and therefore lacked standing. Based on its finding on the standing issue, the court did not address any of the City's other arguments and also dismissed its counterclaim as moot.

¶ 27    Plaintiffs filed a motion to reconsider, which was denied, and this appeal follows.

¶ 28                                    ANALYSIS

¶ 29    On appeal, plaintiffs contend that the circuit court erred in granting the City's motion for summary judgment since they have standing to challenge the DOAH's subject-matter jurisdiction. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 30         Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Id.* However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 31         We note that we may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). Thus, even if plaintiffs prevail on their argument concerning standing, we may affirm the circuit court's judgment if any of the City's additional bases for summary judgment provide an alternate basis for the court's decision.

¶ 32                                            *Standing*

¶ 33         In this case, the basis for the circuit court's grant of summary judgment was its finding that plaintiffs lacked standing to file suit against the City. The doctrine of standing ensures that courts decide actual controversies and not abstract questions. *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 12. Standing requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). "The claimed injury must be (1) distinct and palpable; (2) fairly traceable to

defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 207 (2000). Here, the dispute between the parties turns on the question of whether plaintiffs' "injury" was "fairly traceable" to the City's actions in adjudicating ordinance violations in the DOAH.

¶ 34    The resolution of this issue requires us to consider the interplay between two necessary aspects of any case: standing and subject-matter jurisdiction. Plaintiffs contend that the DOAH lacked subject-matter jurisdiction to adjudicate violations of section 9-76-230 and, therefore, each plaintiff was injured by the entry of a void order against him or her. The City, by contrast, claims that plaintiffs cannot show that they were prejudiced by the DOAH's adjudication of their violations, so plaintiffs have no standing to raise their jurisdictional claims. The parties fault each other for failing to cite case law directly on point; it is apparent, however, that such authority is exceedingly sparse, so we must rely on general principles of both standing and jurisdiction in resolving the instant conflict.[8]

¶ 35    The matter of a plaintiff's standing to bring a cause of action is a threshold one; where a plaintiff has no standing, the proceedings must be dismissed, as lack of standing negates the plaintiff's cause of action. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). "A standing challenge focuses on the party seeking relief—not on the merits of the controversy—and asks whether that party is entitled to pursue the legal challenge, either in their personal or representative capacity." *In re Estate of Zivin*, 2015 IL App (1st) 150606, ¶ 14. Accordingly, in determining whether plaintiffs have standing in the instant case, we need not decide whether

---

[8]While not at issue in this case, we note that a challenge to an administrative agency's jurisdiction is not subject to rules requiring exhaustion of administrative remedies and may be decided by a court in the first instance. See, *e.g.*, *Goral v. Dart*, 2020 IL 125085, ¶¶ 41-42.

plaintiffs' subject-matter jurisdiction claim is meritorious,[9] but only whether plaintiffs are entitled to pursue their legal challenge. In making that determination, however, the nature of a challenge to an administrative agency's subject-matter jurisdiction is highly relevant. See *Pinkston v. City of Chicago*, 2022 IL App (1st) 200957, ¶ 28 (the DOAH is an administrative agency created by the City to adjudicate administrative hearings); *Downtown Disposal Services, Inc. v. City of Chicago*, 407 Ill. App. 3d 822, 827 (2011) (Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) applies to final decisions by the DOAH). We therefore discuss the law applicable to such challenges before considering whether plaintiffs' claims in the instant case demonstrate that they have been injured by the City's actions such that they have standing.

¶ 36        Our supreme court has recognized that "jurisdiction" in the context of an administrative agency has three aspects: (1) personal jurisdiction, which is the agency's authority over the parties and intervenors involved in the proceedings; (2) subject-matter jurisdiction, which is the agency's power " 'to hear and determine causes of the general class of cases to which the particular case belongs' "; and (3) an agency's scope of authority under the statute. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989); *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 553 (1999); *Goral v. Dart*, 2020 IL 125085, ¶ 41. An administrative agency's powers are limited to those granted by the legislature, and any action taken by the agency must be authorized specifically by statute. *Pinkston*, 2022 IL App (1st) 200957, ¶ 26 (citing *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16). Where it acts outside that authority, the agency acts without

---

[9]We note, however, that we discuss the merits of plaintiffs' subject-matter jurisdiction claim to some extent later in our analysis, as an alternate basis for affirming the circuit court's judgment.

jurisdiction, and "[i]ts actions are void, a nullity from their inception." *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 165 (2002). "Because agency action for which there is no statutory authority is void, it is subject to attack at any time in any court, either directly or collaterally." *Id.* at 166 (citing *Business & Professional People*, 136 Ill. 2d at 243-44).

¶ 37        In this case, plaintiffs allege that the DOAH had no power to hear the class of cases at issue, namely, violations of section 9-76-230 and, therefore, the DOAH lacked subject-matter jurisdiction over such cases. If true, "[i]ts actions are void, a nullity from their inception" (*id.* at 165). The City, however, claims that the circuit court properly declined to even reach the issue, as plaintiffs were not prejudiced by the entry of the DOAH decisions and therefore could not trace their purported injuries to the DOAH's actions. We do not find this argument persuasive.

¶ 38        Acceptance of the City's position would violate a bedrock principle of law: that a court—or an agency, as in this case—can act only where it has the jurisdiction to do so. " '[S]ubject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). For a court, this power is granted by our constitution; for an agency, it is granted by statute. *Id.* Subject-matter jurisdiction is so important that it cannot be waived, and may be raised at any time. *Id.* at 333-34. Indeed, courts have the affirmative obligation to consider subject-matter jurisdiction even where it is not raised by the parties. See, *e.g.*, *In re Estate of Gebis*, 186 Ill. 2d 188, 192 (1999). A lack of jurisdiction is fatal to a case—if jurisdiction is lacking, any subsequent judgment is rendered void and may be attacked collaterally. *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. "[T]o say that a judgment is void or, in other words, that it was entered without jurisdiction, is

to say that the judgment may be challenged in perpetuity." *Id.* ¶ 38. The suggestion that a plaintiff is not entitled to even *raise a challenge* to an allegedly void judgment entered against him or her is therefore inconsistent with the fundamental importance of the issue.

¶ 39    Here, plaintiffs' argument is a simple one. They claim that an agency entered a finding of liability against them when it had no power or authority to do so. As a result, plaintiffs were exposed to the consequences of such a finding—a monetary fine at a minimum, which, according to the back of each violation notice, "may be enforced through wage garnishment, collection agency and credit bureau action, and the imposition of liens on real estate and personal estates." Regardless of whether plaintiffs paid the fine or participated in the proceedings, the result is the same: a legal finding of liability against each plaintiff, issued by an agency which allegedly had no authority to do so. The City cites no case in which a court has found that a plaintiff who was subject to an allegedly void judgment lacked the standing to challenge that judgment, and we cannot find this to be the case here.

¶ 40    To be clear, there are a number of cases in which plaintiffs have been found to lack standing to challenge administrative *procedures*, especially when they did not avail themselves of those procedures by failing to participate in the administrative hearing. This is not that type of case. Plaintiffs are not contending that the procedures used by the DOAH were improper—they are arguing the DOAH did not have the authority to hear the cases at all. This is a question they most certainly had the standing to raise, and we must find that the circuit court erred in granting the City's motion for summary judgment on the basis of lack of standing.

¶ 41    Although we have determined the circuit erred in granting the City's motion for summary judgment on the basis of standing, the City raises several alternate bases for affirming the circuit court's judgment. We may affirm the circuit court's judgment on any basis supported

by the record, so we turn to consideration of the City's additional arguments. See *Ray Dancer*, 230 Ill. App. 3d at 50.

¶ 42                              *Authority for 2012 Violations*

¶ 43        The first argument raised by the City as an alternate basis for affirming the grant of summary judgment is its claim that it is entitled to summary judgment with respect to the two violations occurring in 2012. The City contends that the DOAH had the authority to adjudicate ordinance violations at that time, as section 9-76-230 was not "similar" to any offense under the Vehicle Code.

¶ 44        As noted, the Illinois Municipal Code allows a municipality to administratively adjudicate any violation of a municipal ordinance except for (1) proceedings not within the statutory or home rule authority of municipalities and (2) "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6-204 of the Illinois Vehicle Code." 65 ILCS 5/1-2.1-2 (West 2020).

¶ 45        At the time of the alleged violations in 2012, the Vehicle Code prohibited operating a motor vehicle on a roadway while "using an electronic communication device to compose, send, or read an electronic message." 625 ILCS 5/12-610.2(b) (West 2010). Since section 9-76-230 contains a broader prohibition against "using" cell phones, which includes talking on the phone (Chicago Municipal Code § 9-76-230(a) (amended Nov. 17, 2021)), the City contends that the earlier version of the state statute and the ordinance were not sufficiently similar to bar the DOAH from administratively adjudicating violations of the ordinance. We agree.

¶ 46        We note that the Illinois Municipal Code does not define "similar offense," and few cases have considered the issue; the only case cited by the parties merely recites the applicable

16

provisions at issue and declares them "similar." See *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶¶ 13-14 (comparing sections 9-72-070 and 9-72-080 of the Chicago Municipal Code (Chicago Municipal Code § 9-72-070 (amended at Chi. City Clerk J. Proc. 93351 (Nov. 15, 2006)); Chicago Municipal Code § 9-72-080 (amended at Chi. City Clerk J. Proc. 64870 (Dec. 7, 2005))) with sections 15-112, 15-113, and 15-301 of the Vehicle Code (625 ILCS 5/15-112, 15-113, 15-301 (West 2008)). While it is clear that "similar" does not mean "identical" (see *id.* ¶ 14), we must determine whether section 12-610.2(b) of the Vehicle Code operates to strip the DOAH of its authority to adjudicate violations of section 9-76-230(a).

¶ 47    The only substantive difference between the two laws is the fact that the City's ordinance prohibits talking on a cell phone, while the version of the state statute in effect prior to 2014 does not. We find that this difference, however, is significant and renders the laws dissimilar for purposes of section 1-2.1-2 of the Illinois Municipal Code.

¶ 48    Our conclusion is based on two main factors. First, the legislative history of section 12-610.2(b) of the Vehicle Code makes clear that the legislature intentionally passed a statute that was narrower than the City's ordinance. As noted, the City's ordinance has been in effect since 2005 and has always prohibited all cell phone use. By contrast, the legislature first passed the state statute in 2010, which specifically prohibited only "compos[ing], send[ing], or read[ing] an electronic message" (625 ILCS 5/12-610.2(b) (West 2010)) and did not prohibit talking. Attempts to broaden the statute to include talking on a cell phone failed until 2014, with legislators expressing concern about over-regulating private behavior, especially in less-dense areas of the state where there was less traffic. See, *e.g.*, 97th Ill. Gen. Assem., House Proceedings, Mar. 8, 2012, at 19 (statements of Representative Durkin); 97th Ill. Gen. Assem.,

17

House Proceedings, Mar. 8, 2012, at 27 (statements of Representative Jefferson). Thus, where the original version of the state statute was specifically intended to be narrower than the City's ordinance, finding the two laws to be "similar" such that the City's authority to adjudicate violations of its ordinance was limited would be an odd result.

¶ 49     We are also guided by the fact that the City is a home rule unit of government, meaning that we must read limitations on its power carefully. Except as limited by article VII, section 6 of the Illinois Constitution, a home rule unit such as the City "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Section 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). Furthermore, the constitution expressly provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 50     The legislature has the authority to limit or deny the exercise of a municipality's home rule powers but, if it intends to do so, the statute must contain an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31 (citing *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 108 (1981)); see also 5 ILCS 70/7 (West 2012) ("No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."). In

the absence of any such statement, the state and the municipality may govern concurrently. *Palm*, 2013 IL 110505, ¶ 31.

¶ 51 Here, the legislature has limited the City's authority to administratively adjudicate certain ordinance violations: "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6-204 of the Illinois Vehicle Code" (65 ILCS 5/1-2.1-2 (West 2020)). See *Catom Trucking*, 2011 IL App (1st) 101146, ¶ 30 (finding that the DOAH lacked jurisdiction to consider certain ordinance violations under section 1-2.1-2 of the Illinois Municipal Code). Since the powers of a home rule unit must be construed liberally, and limitations on that power must be express, we find that a narrow interpretation of the "similar[ity]" requirement of section 1-2.1-2 is appropriate. Here, where the statute is substantially—and intentionally— narrower than the City ordinance, we cannot find that the City was prohibited from adjudicating ordinance violations in the DOAH. Accordingly, we affirm the circuit court's grant of summary judgment on the 2012 violations on this basis.

¶ 52 Our decision resolves the claims presented by plaintiffs Sequeira and Klein (with respect to one of her two violations). This leaves the claims concerning Klein's second violation, as well as those against plaintiffs Potek and Michelini. We thus continue our analysis to determine whether there is an alternate basis for affirming the circuit court's grant of summary judgment with respect to any of the remaining claims.

¶ 53                                    *Voluntary Payment*

¶ 54 The City next contends that it is entitled to summary judgment on Potek's, Klein's, and Michelini's claims based on the voluntary payment doctrine. The voluntary payment doctrine "embodies the ancient and universally recognized rule that money voluntarily paid under a

claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." (Internal quotation marks omitted.) *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 22. To avoid application of this doctrine, a party must show that the claim asserted was unlawful and that the payment was not voluntary. *Id.* ¶ 23. This can be established in various ways, such as by showing that there was some necessity that amounted to compulsion and payment was made under the influence of that compulsion. *Id.* In the absence of fraud, coercion, or a mistake of fact, however, monies paid under a claim of right to payment but under a mistake of law are not recoverable. *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847-48 (1995). While the issue of duress and compulsory payment is ordinarily one of fact, where the facts are not in dispute and only one inference can be drawn from the facts, the issue may be decided as a matter of law. *Id.* at 850.

¶ 55        Here, plaintiffs Potek, Klein, and Michelini all paid the fines imposed as a result of their ordinance violations instead of contesting the violations. Accordingly, the City claims that their payments were "voluntary" and they cannot now challenge them. We do not find this argument persuasive.

¶ 56        Under the voluntary payment doctrine, a payment is made under duress when the payee "exert[s] some actual or threatened power over the payor from which the payor has no immediate relief except by paying." (Internal quotation marks omitted.) *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 627 (1997). Here, each plaintiff was issued a violation notice by a police officer, which provided that he or she had two options: (1) prepay a fine or (2) appear at a hearing to contest the violation. Plaintiffs contend that choosing to prepay the fine instead of contesting the violation was not a true "choice," as they would have inevitably

lost any challenge to the violation. Under the City's traffic code, if they contested the violation, plaintiffs were limited to only certain specified defenses. See Chicago Municipal Code § 9-100-060 (amended at Chi. City Clerk J. Proc. 23762 (Apr. 18, 2012) (setting forth grounds for contesting a violation)). None of these grounds would likely apply in this case—plaintiffs Potek and Klein admitted that they had been using their cell phones while driving, while Michelini's violation notice itself constituted *prima facie* evidence of his liability (see Chicago Municipal Code § 9-100-070(c) (amended at Chi. City Clerk J. Proc. 23762 (Apr. 18, 2012))). Moreover, none of the defenses available to them included legal challenges, such as the instant challenge to the DOAH's jurisdiction. Plaintiffs thus claim that contesting their violations nevertheless would have resulted in the imposition of a fine, which would likely be larger than the fine they faced by prepaying.

¶ 57    As noted, the issue of whether payment was made under compulsion or duress is ordinarily a question of fact, and may only be decided as a matter of law where the undisputed facts lead to only one plausible inference. *Smith*, 276 Ill. App. 3d at 850. Here, however, there are several inferences that may be drawn from the fact that plaintiffs prepaid their fines, including plaintiffs' claims that there was no real "choice" in the matter. As a result, we cannot find that the voluntary payment doctrine applies to plaintiffs' claims as a matter of law such that summary judgment could be granted on that basis.

¶ 58    Our result might be different if, for instance, plaintiffs were challenging the amount of the fine. In that case, payment of an incorrect amount would be considered voluntary, as plaintiffs would be able to discover the correct amount through ordinary diligence. See, *e.g.*, *McIntosh*, 2019 IL 123626, ¶ 40 (finding that the plaintiff could have investigated whether a bottled water tax listed on a receipt properly applied to his purchase). Here, however, plaintiffs are

challenging the DOAH's jurisdiction to adjudicate violations of a municipal ordinance. Plaintiffs would have no reason to independently assess the jurisdiction of the agency issuing the violation prior to paying. We therefore cannot say that, as a matter of law, plaintiffs are barred from raising such a claim due to the mere fact that they paid a fine instead of contesting the violations first. Accordingly, we cannot find that the voluntary payment doctrine provides an alternate basis for affirming the grant of summary judgment.

¶ 59                                    *In Pari Delicto*

¶ 60        Finally, the City claims that it is entitled to summary judgment on Potek's and Klein's claims, as they admitted to violating the ordinance and their claims for unjust enrichment are therefore barred by the *in pari delicto* doctrine. The doctrine of *in pari delicto* "embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." (Internal quotation marks omitted.) *Nicholson v. Shapiro & Associates, LLC*, 2017 IL App (1st) 162551, ¶ 10; *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 34 (2005).

¶ 61        As an initial matter, plaintiffs claim that the City should be precluded from raising this argument, as it was not included in its affirmative defenses. Plaintiffs are correct that *in pari delicto* and unclean hands (which was included as an affirmative defense), although similar, are distinct theories. Both, however, are based on the theory that a wrongdoer may not benefit from the wrongdoing. See *Nicholson*, 2017 IL App (1st) 162551, ¶ 10; *Toushin v. First Merit Bank*, 2021 IL App (1st) 192171, ¶ 70. As the City has consistently raised the issue of the effect of plaintiffs' admitted violations, we find its arguments to be properly before us on appeal.

¶ 62        To state a cause of action for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that retention of the benefit

violates the fundamental principles of justice, equity, and good conscience. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. Even when a defendant has retained a benefit, however, "he is liable for payment only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (Internal quotation marks omitted.) *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004).

¶ 63        Additionally, as noted, a party may not seek equitable relief when he or she engaged in misconduct in connection with the subject matter of the litigation. *Toushin*, 2021 IL App (1st) 192171, ¶ 70; see also *Gunn v. Sobucki*, 216 Ill. 2d 602, 618-19 (2005) ("Few principles of equity are more basic than the doctrine that one seeking the aid of the courts is prohibited from taking advantage of his own wrongdoing."). Here, the City contends that plaintiffs' admitted violations of the ordinance represents such misconduct. We do not find this argument persuasive.

¶ 64        There is no dispute that plaintiffs Potek and Klein admitted that they were using their cell phones at the time that they were stopped by a police officer. We cannot find, however that this means that they are "taking advantage of [their] own wrongdoing" (*Gunn*, 216 Ill. 2d at 618-19) in seeking the return of the fines they paid. Under the doctrine of *in pari delicto*, the law will not aid either party to an illegal act, so long as they are of equal knowledge, willfulness, and wrongful intent. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 297 (2006). Here, we cannot say that, as a matter of law, plaintiffs are barred from seeking the return of their payments under this doctrine. Plaintiffs are not seeking to be rewarded for violating the law; instead, they are seeking the return of money that they contend was unlawfully taken from them by an agency acting outside the scope of its authority. As noted, a defendant is liable for payment under an unjust enrichment theory "only if the circumstances

23

of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (Internal quotation marks omitted.) *Hayes Mechanical*, 351 Ill. App. 3d at 9. As between the City and plaintiffs, it is for the fact finder to decide which party is entitled to the payments, and we cannot find as a matter of law that plaintiffs are barred from seeking recovery simply by virtue of the fact that these proceedings began by plaintiffs violating an ordinance. Accordingly, we cannot find that this argument provides an alternate basis for affirming the circuit court's judgment.

¶ 65                                                CONCLUSION

¶ 66        For the reasons set forth above, we affirm in part and reverse in part the circuit court's grant of summary judgment. We find that plaintiffs had standing to raise their claims alleging the DOAH's lack of subject-matter jurisdiction. The violations occurring prior to the January 1, 2014, effective date of the amendment to section 12-610.2 of the Vehicle Code, however, were properly adjudicated by the DOAH, as section 9-76-230 of the City's traffic code was not similar to any offense under the Vehicle Code at the time.

¶ 67        Affirmed in part and reversed in part; cause remanded.

*Potek v. City of Chicago*, 2022 IL App (1st) 211286

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-10507; the Hon. Pamela McLean Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Myron M. Cherry, Jacie C. Zolna, Benjamin R. Swetland, Jerimiah W. Nixon, and Jessica C. Chavin, of Myron M. Cherry & Associates, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, and J. David Duffy, Robert J. Wagner, and Patrick Morales-Doyle, of Thompson Coburn LLP, Special Assistant Corporation Counsel, of counsel), for appellee. |