2026 IL App (1st) 250158

Third Division
February 18, 2026

No. 1-25-0158

|  |  |  |
|---|---|---|
| AARON POTEK, ADINA KLEIN, and STEPHEN MICHELINI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 17 CH 10507 |
| THE CITY OF CHICAGO; ERIN KEANE, in Her Official Capacity as Chicago City Comptroller; and PATRICIA JACKOWIAK, in Her Official Capacity as Chicago Chief Administrative Law Judge and Director of the Department of Administrative Hearings, | ) ) ) ) ) ) | The Honorable Pamela McLean Meyerson, Judge Presiding. |
| Defendants-Appellees. | ) ) ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Martin and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1 Between 2012 and 2014, plaintiffs Rabbi Aaron Potek, Adina Klein, and Stephen Michelini all received "Administrative Notice[s] of Ordinance Violation[s]" (violation notices) from the City of Chicago (City) for using cell phones while driving, a violation of a City ordinance. These violations were administratively adjudicated by the City's Department of Administrative Hearings (DOAH), and all three plaintiffs had findings of liability entered against them by the DOAH. In 2017, plaintiffs filed suit against the City, alleging that the DOAH lacked subject-matter jurisdiction to adjudicate the ordinance violations, rendering the findings of liability void. The circuit court granted summary judgment in favor of the City, finding that plaintiffs lacked standing to challenge the City's use of the DOAH to adjudicate the violations. On

appeal, we reversed as to the violations occurring after January 1, 2014, finding that plaintiffs had standing to raise their claims, and remanded for further proceedings. See *Potek v. City of Chicago*, 2022 IL App (1st) 211286.

¶ 2 After remand, the circuit court granted plaintiffs' motion for class certification, and litigation continued. In 2024, however, the Illinois Supreme Court issued a decision in which it found that the provision of the Illinois Municipal Code relied on by plaintiffs in the instant appeal did not represent a jurisdictional bar against certain administrative adjudications. See *Cammacho v. City of Joliet*, 2024 IL 129263, ¶ 38 (discussing 65 ILCS 5/1-2.1-2 (West 2020)). As a result, plaintiffs shifted their focus to a different basis for their jurisdictional claims. The circuit court, however, found that this basis had not been previously alleged in plaintiffs' complaint and denied plaintiffs leave to amend their complaint to add the new basis. Instead, the circuit court granted summary judgment in favor of the City. Plaintiffs now appeal, and for the reasons that follow, we reverse and remand.

¶ 3                                             BACKGROUND

¶ 4                             *City Ordinance and Administrative Adjudication*

¶ 5 Since 2005, the City's traffic code has contained an ordinance prohibiting the use of cell phones while driving. The ordinance at issue provides that, with certain exceptions not relevant to the instant appeal, "no person shall drive a motor vehicle while using a mobile, cellular, analog wireless or digital telephone." Chicago Municipal Code § 9-76-230(a) (amended Nov. 17, 2021).[1] The ordinance further clarifies that "using" the device includes, but is not limited

---

[1]The language of section 9-76-230(a) has not changed since 2010, and this language was in effect at the time of all of plaintiffs' alleged violations. See Chicago Municipal Code § 9-76-230(a) (amended at Chi. City Clerk J. Proc. 106,597 (Nov. 17, 2010)).

to, (1) talking or listening to another person on the telephone, (2) text messaging, (3) sending, reading, or listening to an electronic message, or (4) browsing the Internet. *Id.*

¶ 6        A driver who violates section 9-76-230 is subject to a fine between $90 and $500 for each offense. Chicago Municipal Code § 9-4-020 (amended at Chi. City Clerk J. Proc. 43,682 (Nov. 5, 2008)). If the violation occurs at the time of a traffic crash, the driver may be subject to an additional $500 fine. Chicago Municipal Code § 9-76-230(c) (amended Nov. 17, 2021).

¶ 7        Prior to 2015, the City's traffic code provided that if any violation of section 9-76-230 was subject to the reporting requirements of section 6-204 of the Illinois Vehicle Code (625 ILCS 5/6-204 (West 2010)), the City's corporation counsel "shall institute appropriate proceedings in a court of competent jurisdiction to prosecute such violation." Chicago Municipal Code § 9-76-230(d) (added at Chi. City Clerk J. Proc. 43,707 (Nov. 5, 2008)). It is undisputed, however, that the City's general practice for violations of section 9-76-230 was prosecuting them through the DOAH.

¶ 8        Until August 2015, including during the time of plaintiffs' alleged offenses, violations of section 9-76-230 were administratively adjudicated by the DOAH under the procedures set forth in the Chicago Municipal Code. In February 2015, the plaintiff in a federal lawsuit against the City alleged that the City was not permitted to administratively adjudicate violations of section 9-76-230.[2] In August 2015, "pursuant to the advice of counsel," the City began issuing "Personal Service Citations" for violations of section 9-76-230, which were adjudicated in the circuit court of Cook County instead of in the DOAH, and no longer prosecuted such violations in the DOAH. In addition, in October 2015, the subsection of section 9-76-230 requiring reportable offenses to be prosecuted in the circuit court instead of by the DOAH was removed.

---

[2]The federal lawsuit was subsequently dismissed for lack of standing.

See Chicago Municipal Code § 9-76-230 (amended at Chi. City Clerk J. Proc. 11,951, 12,044 (Oct. 28, 2015)). Finally, in 2017, the City placed any indebtedness due to violations of the ordinance in "Collection Hold" status; while the debts are still owed by the debtors, the City is not restricting any privileges based on the violations. Based on the City's discovery responses, between January 1, 2014, until December 31, 2015, the City collected approximately $10 million in fines paid for violations of section 9-76-230, while an additional $10.1 million remained unpaid.

¶ 9                                    *Illinois Vehicle Code*

¶ 10        The use of "[e]lectronic communication devices" is also governed by the Illinois Vehicle Code. See 625 ILCS 5/12-610.2 (West 2010). In 2010, the legislature enacted a prohibition against operating a motor vehicle on a roadway while "using an electronic communication device to compose, send, or read an electronic message," subject to certain exceptions not relevant to the instant appeal. *Id.* § 12-610.2(b). An " '[e]lectronic communication device' " was defined to include "a wireless telephone, personal digital assistant, or a portable or mobile computer while being used for the purpose of composing, reading, or sending an electronic message." *Id.* § 12-610.2(a). An " '[e]lectronic message' " was defined to include e-mail, text messages, instant messages, or commands or requests to access the Internet. *Id.*

¶ 11        In 2014, the legislature expanded the scope of section 12-610.2, amending the statute to provide that a person may not operate a motor vehicle on a roadway "while using an electronic communication device." 625 ILCS 5/12-610.2(b) (West 2014).

¶ 12        Whenever a person is convicted of any offense under the Illinois Vehicle Code "or similar offenses under a municipal ordinance" (subject to certain exceptions not relevant in the instant case), the clerk of the court in which such conviction occurs must forward a report of the

4

conviction to the Secretary of State within five days. *Id.* § 6-204(a)(2). These records allow the office of the Secretary of State to perform its duties to cancel, revoke, or suspend drivers' licenses where appropriate. *Id.* § 6-204(a).

¶ 13                                    *Plaintiffs' Offenses*

¶ 14        The named plaintiffs in the instant case all received violation notices for use of a cell phone while driving during the period of time in which violations were adjudicated by the DOAH. After receiving a violation notice on August 5, 2014, plaintiff Klein appeared before the DOAH for an administrative hearing, where she admitted liability for the violation. The DOAH entered a finding of liability, and Klein paid a $90 fine, plus a $20 administrative fee. Plaintiff Michelini received a violation notice on August 10, 2014, but did not attend the administrative hearing, instead prepaying a $100 fine. Similarly, plaintiff Potek received a violation notice on September 8, 2014, and prepaid a $100 fine instead of attending the administrative hearing. In their depositions, plaintiffs Klein and Potek admitted to using their cell phones while driving, but Michelini disputed that he committed the violation.

¶ 15                                         *Complaint*

¶ 16        On August 1, 2017, plaintiffs filed a two-count complaint against the City, alleging that the City had improperly adjudicated ordinance violations in the DOAH, rather than in the circuit court. Plaintiffs alleged that section 9-76-230 of the City's traffic code was "similar" to section 12-610.2 of the Illinois Vehicle Code. As a result, plaintiffs alleged that the DOAH lacked subject-matter jurisdiction to adjudicate the violations under the Illinois Municipal Code, rendering the resulting judgments void *ab initio*.

¶ 17        Plaintiffs' claims were based on section 1-2.1-2 of the Illinois Municipal Code, which permits any municipality to provide for a system of administrative adjudication of municipal

code ordinances to the extent permitted by the Illinois Constitution. 65 ILCS 5/1-2.1-2 (West 2014). The Illinois Municipal Code, however, defines a " 'system of administrative adjudication' " as the adjudication of any violation of a municipal ordinance except for (1) proceedings not within the statutory or home rule authority of municipalities and (2) "any offense under the Illinois Vehicle Code or a similar offense that is a traffic regulation governing the movement of vehicles and except for any reportable offense under Section 6-204 of the Illinois Vehicle Code." *Id.* As noted, section 6-204 of the Illinois Vehicle Code, which concerns a court's reporting requirements to the Secretary of State, requires reporting of "any offense under this Code or similar offenses under a municipal ordinance," with certain exceptions not relevant to the instant appeal. 625 ILCS 5/6-204(a)(2) (West 2014).

¶ 18        As plaintiffs contended that the City's ordinance was "similar" to the state statute, plaintiffs maintained that violations were required to be adjudicated in the circuit court and not by the DOAH, where (1) they were moving violations and (2) they were reportable offenses. Accordingly, plaintiffs requested a declaratory judgment that all administrative findings of liability under the ordinance were null and void, and any fines or penalties stemming from those administrative findings were similarly void. Additionally, under the theory of unjust enrichment, plaintiffs sought the return of the fines and penalties they paid to the City.

¶ 19        The complaint was amended in December 2017 to add another named plaintiff,[3] as well as a number of additional counts. While captioned as "factual allegations," the amended complaint contained 102 paragraphs including both traditional factual allegations and setting forth plaintiffs' legal arguments concerning the City's alleged misconduct. As relevant to the

---

[3]Luke Sequeira, who was added as a named plaintiff, received a violation notice in 2012 and is no longer a party to the action following remand.

instant appeal, the "factual allegations" of the amended complaint alleged that (1) section 1-2.1-2 of the Illinois Municipal Code forbade the City from prosecuting violations of section 9-76-230 of the City's traffic code administratively where they were moving violations which were similar to offenses set forth in the Illinois Vehicle Code; (2) even if not moving violations, the City failed to comply with requirements under state law and the City's own ordinances for adjudicating the violations; and (3) regardless of whether the violations were moving violations or compliance violations, section 1-2.1-2 of the Illinois Municipal Code required the City to prosecute the violations in the circuit court so they could be reported to the Secretary of State.

¶ 20     With respect to the second point—the failure to comply with the City's own ordinances—the amended complaint pointed to four ordinances with which the City allegedly failed to comply by (1) adjudicating the violations in the incorrect division of the DOAH, (2) failing to send second violation notices, (3) failing to list license plate numbers on each violation notice, and (4) imposing fines for violations which exceeded the amount allowed by state law. With respect to the third point, concerning the reporting requirement, the amended complaint alleged that "[i]t is clear that the City knew full well that the law required 'reportable' Ordinance violations to be tried in an Illinois circuit court rather than the City's private administrative courts," pointing to section 9-76-230(d) of the Chicago Municipal Code. The amended complaint concluded its "factual allegations" by alleging that the DOAH lacked jurisdiction over plaintiffs' alleged ordinance violations, as (1) Illinois law forbade the City from adjudicating such violations in its administrative system and (2) "the City violated provisions of state law and its own municipal code concerning the manner in which Ordinance offenses must be adjudicated." The amended complaint alleged that "[t]hus, even if the City's private

courts did have jurisdiction to adjudicate Ordinance offenses, the City's critical failures deprived those courts of that jurisdiction. For this additional and independent reason, the City's private courts acted illegally each time they entered judgment against an alleged Ordinance violator, accepted a plea of guilty, collected monies, or otherwise adjudicated an alleged violation of the Ordinance."

¶ 21 As noted, the amended complaint also set forth a number of additional counts. In addition to the previously alleged counts for declaratory judgment and unjust enrichment based on a lack of jurisdiction (counts I through IV), the amended complaint alleged counts against the City concerning each of the alleged failures to comply with the Chicago Municipal Code (counts V through XV), as well as counts against the City's comptroller (count XVI) and DOAH director (count XVII) for a writ of *mandamus* based on the allegations concerning the lack of license plate information on the violation notices.

¶ 22 The City filed a motion to dismiss the amended complaint, and the circuit court denied its motion with respect to counts I through IV. In ruling on the motion to dismiss, the circuit court found that the violations of section 9-76-230 constituted moving violations, not compliance violations. As such, the circuit court granted the motion to dismiss with respect to counts V through XVII, which were based on the violations being categorized as compliance violations.

¶ 23 *Motion for Summary Judgment and Prior Appeal*

¶ 24 After extensive motion practice, including a motion for class certification,[4] the City filed a motion for summary judgment on October 15, 2020. In its motion, the City claimed that plaintiffs lacked standing to file suit, as none of them participated in a DOAH hearing and they

---

[4]While the motion for class certification was filed prior to the motion for summary judgment, the parties argued both motions at the same time before the circuit court. The circuit court's ruling on the summary judgment motion meant that the motion for class certification was denied as moot.

were unable to demonstrate that they were injured by the administrative adjudication of their violations. The City additionally claimed that, even if plaintiffs had standing, it was entitled to judgment as a matter of law for several reasons. On August 19, 2021, the circuit court entered an order granting the City's motion for summary judgment, finding the City's standing argument dispositive.

¶ 25    On appeal, we affirmed in part and reversed in part, determining that plaintiffs had standing to challenge the subject-matter jurisdiction of the DOAH, as a finding otherwise "would violate a bedrock principle of law: that a court—or an agency, as in this case—can act only where it has the jurisdiction to do so." *Potek*, 2022 IL App (1st) 211286, ¶ 38. In addition, we examined the City's alternate bases for summary judgment to determine whether affirmance was nevertheless appropriate.

¶ 26    As relevant to the instant appeal, we considered the City's claim that it was entitled to summary judgment with respect to the violations occurring prior to January 1, 2014, based on its contention that section 9-76-230 was not "similar" to any offense under the Illinois Vehicle Code at that time and, therefore, the DOAH had the authority to adjudicate such ordinance violations. In addressing this argument, this court and the City both accepted plaintiffs' interpretation of section 1-2.1-2 of the Illinois Municipal Code as representing a limitation on the City's home-rule authority.[5] We ultimately agreed with the City's position, finding that the circuit court's grant of summary judgment as to violations occurring prior to January 1, 2014, was proper, as the version of the state statute in effect at that time did not prohibit speaking on a cell phone, rendering the statute dissimilar from the City's ordinance for purposes of section

---

[5]We note that there was support for this interpretation in *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, ¶ 30, *overruled in part by Cammacho*, 2024 IL 129263, which we relied on in determining that the legislature limited the City's authority to administratively adjudicate certain ordinance violations. *Potek*, 2022 IL App (1st) 211286, ¶ 51.

1-2.1-2 of the Illinois Municipal Code. *Id.* ¶ 47. With respect, however, to the City's other arguments, we found that they did not provide a basis for affirming the circuit court's grant of summary judgment. Accordingly, we reversed the grant of summary judgment with respect to the alleged violations occurring after January 1, 2014, and remanded for further proceedings. *Id.* ¶ 66.

¶ 27                                      *Proceedings After Remand*

¶ 28        Following reinstatement of the case in the circuit court and supplemental briefing on the matter, the circuit court granted plaintiff's motion for class certification, certifying a class of "[a]ll individuals who, from the period of January 1, 2014 to the present day, were found liable for a violation of § 9-76-230 of the Municipal Code of the City of Chicago by the City of Chicago Department of Administrative Hearings."

¶ 29        On May 17, 2023, plaintiffs filed a motion for summary judgment, contending that the findings of liability from the DOAH proceedings and the fines flowing therefrom "are unlawful and void *ab initio* for the same reason: Illinois law prohibits cell phone tickets from being administratively adjudicated." Plaintiffs contended that section 1-2.1-2 of the Illinois Municipal Code prohibited the administrative adjudication of the ordinance violations for two independent reasons: (1) section 9-76-230 of the Chicago Municipal Code was similar to an offense listed in the Illinois Vehicle Code and the ordinance was a moving violation and (2) the ordinance was similar to an offense listed in the Illinois Vehicle Code and violations of the ordinance were reportable to the Secretary of State. Despite this law, plaintiffs maintained that the City administratively adjudicated such ordinance violations while "kn[owing] full well that [the] DOAH lacked jurisdiction to adjudicate section 9-76-230 citations." Plaintiffs noted that, in August 2015, the City stopped administratively adjudicating the ordinance violations and,

"[s]hortly thereafter and in a further effort to cover up its illegal conduct, the City quietly deleted the provision of *** section 9-76-230 that acknowledged that a violation may be 'subject to the reporting requirements of Section 6-204 of the Illinois Vehicle Code' and directing 'the corporation counsel [to] institute appropriate proceedings in a court of competent jurisdiction to prosecute such violation.' " The City, however, "continued to collect on that invalid debt for another two years and only ceased on the eve of the filing of this lawsuit."

¶ 30     Plaintiffs asked the circuit court to "confirm its prior ruling that [section 9-76-230 of the Chicago Municipal Code] is similar to [section 12-610.2 of the Illinois Vehicle Code] and is both a moving violation and reportable under Section 6-204 of the [Illinois Vehicle Code]." As such, plaintiffs requested a ruling that all findings of liability for such violations issued after January 1, 2014, were void *ab initio* based on a lack of subject-matter jurisdiction and that all fines stemming from the administrative proceedings were similarly void and never lawfully owed. Plaintiffs further contended that the effect of such a finding would place all of the class members who paid their citations in the same position: "they all paid unlawful fines, costs, and other amounts that the City had no right to assess or collect," making summary judgment on the unjust enrichment counts appropriate.

¶ 31     In response, the City filed a cross-motion for summary judgment on the class claims, as well as a motion for summary determination on its counterclaims concerning plaintiffs Potek and Klein. First, the City contended that section 1-2.1-2 of the Illinois Municipal Code did not preempt the City's home rule power to administratively adjudicate violations of its municipal ordinances. Second, even if it did, the City maintained that the 2014 amendment to the distracted driver statute under the Illinois Vehicle Code did not satisfy the requirements for preemption, nor did it bring violations of section 9-76-230 within the scope of section 1-2.1-

2's moving violation exception. Third, the City claimed that even if the City was preempted from administratively adjudicating violations of section 9-76-230, the orders adjudicating such violations remained valid "under the *de facto* doctrine." Finally, the City contended that it was entitled to a summary determination on the issue of liability on its counterclaims against plaintiffs Klein and Potek where they had admitted to violating the ordinance. In its argument concerning home rule preemption, the City observed that "[t]his issue has been raised in an appeal currently pending before the Illinois Supreme Court, *Cammacho v. City of Joliet*, No. [129263]."[6]

¶ 32    In response to the City's home rule preemption argument, plaintiffs argued that section 1-2.1-1 of the Illinois Municipal Code prohibited home rule units from administratively adjudicating moving or reportable violations. Plaintiffs additionally argued: "Furthermore, during the relevant time period, the City's cell phone ordinance provided that violations could not be administratively adjudicated if they were subject to the reporting requirements of Section 6-204, which they clearly and unambiguously were," quoting section 9-76-230(d) of the Chicago Municipal Code. Plaintiffs claimed:

> "Because the state cell phone statute was an offense under the Vehicle Code—and because the City's cell phone ordinance was similar to the state statute since at least 2014—the City's own municipal code prohibited it from administratively adjudicating that offense, even if it did not constitute a moving violation. In the end, even if the City

---

[6]While not mentioned in its motion, we observe that the City had filed an *amicus* brief in *Cammacho* approximately a month earlier, in which it made the same arguments concerning home rule preemption as in its cross-motion for summary judgment in the instant appeal. The issue of home rule preemption was not considered by the circuit court or appellate court in *Cammacho*, nor was it raised in the City of Joliet's petition for leave to appeal in the supreme court. As the supreme court noted in its decision, described further below, the home rule preemption argument was raised for the first time during briefing before the supreme court.

is correct that state law poses no barrier to DOAH's ability to administratively adjudicate moving or reportable violations (it is not), its own municipal code prohibited it from doing so."

¶ 33    In its reply, the City claimed that "[t]his argument, made in passing, does not bear on home rule preemption." The City further contended that, while plaintiffs had "neither pleaded nor developed a claim that a City ordinance barred the City from sending their tickets to DOAH, it is foreclosed by binding precedent in any event."

¶ 34    The circuit court heard argument on the parties' cross-motions for summary judgment on January 18, 2024. Prior to the court issuing a decision, however, on April 4, 2024, plaintiffs filed a motion to consider new authority, as the Illinois Supreme Court had decided *Cammacho*, 2024 IL 129263, earlier that day.

¶ 35    In *Cammacho*, the supreme court considered whether section 1-2.1-2 of the Illinois Municipal Code preempted a home rule unit's authority to administratively adjudicate certain offenses. After considering the requirements for legislative preemption of home rule authority, the supreme court determined that section 1-2.1-2 did not represent a jurisdictional bar against such adjudications, overruling *Catom Trucking* to the extent that it had found otherwise. *Id.* ¶ 31. The supreme court nevertheless affirmed the appellate court's judgment on an alternate basis, finding that the City of Joliet had itself limited its home rule authority by providing in its code of ordinances that certain ordinance violations were required to be prosecuted in the circuit court. *Id.* ¶ 50. As such, the supreme court found that "the Joliet Code of Ordinances did not confer jurisdiction on the hearing officer to administratively adjudicate the ordinance violations." *Id.*

13

¶ 36      In plaintiffs' motion to consider new authority, plaintiffs contended that *Cammacho* supported their jurisdictional argument. While plaintiffs recognized that the supreme court decision "undermine[d] Plaintiff's preemption theory in this case," they nevertheless maintained that the decision "completely vindicate[ed] Plaintiffs on other grounds." Plaintiffs maintained that, "[j]ust like the Joliet ordinance in *Cammacho*," the Chicago Municipal Code had long provided that, if violations of section 9-76-230 were reportable, they were required to be prosecuted in the circuit court. As such, where the municipal ordinance was similar to a provision of the Illinois Vehicle Code, it was reportable and, consequently, the DOAH did not have the authority to administratively adjudicate the violations. In addition, based on the Illinois Supreme Court's discussion of "similarity" in *Cammacho*, plaintiffs contended that our previous decision—which had found the pre-2014 version of the state statute to be dissimilar to the municipal ordinance—was wrongly decided on that issue.

¶ 37      Plaintiffs also filed a motion to amend the class definition based on the *Cammacho* court's analysis concerning the issue of similarity, contending that our prior holding was "flatly incompatible" with the approach taken by the supreme court.[7] Plaintiffs further requested the entry of summary judgment on behalf of the amended class.

¶ 38      In response to plaintiffs' motion to consider new authority, the City contended that *Cammacho* foreclosed plaintiffs' home rule argument and that the circuit court should "reject Plaintiffs' veiled request to let them redo their case on the fly after seven years of litigation and with cross-motions for summary judgment fully briefed, argued, and ripe for decision."

---

[7]We observe that the supreme court's decision did not cite or otherwise address our prior opinion in this case.

Instead, the City argued that the circuit court should follow *Cammacho*, grant summary judgment in favor of the City, and enter final judgment in its favor.

¶ 39 On May 2, 2024, plaintiffs filed a "Motion in the Alternative for Leave to Amend Complaint." Plaintiffs maintained that no amendment to their pleadings was required but, "out of an abundance of caution," sought to add language to their amended complaint specifically listing section 9-76-230(d) of the Chicago Municipal Code as a basis for the relief requested therein.

¶ 40 On January 23, 2025, the circuit court entered an order on all pending matters. The circuit court first found that the theory of liability based on the municipal ordinance was a new theory, as the focus of the amended complaint was on state law and the counts of the complaint relating to the reporting requirement cited only state law as the basis for their request for relief. The circuit court further noted that plaintiffs' motion for summary judgment did not argue that the municipal ordinance was a separate and independent basis for imposing liability but represented part of the City's "alleged scheme to 'cover up its unlawful conduct' of adjudicating cell phone violations in the wrong forum." In addition, the circuit court observed that the certified class consisted of individuals who received tickets between January 1, 2014, and the present, but the ordinance was in effect from 2008 through October 28, 2015. The circuit court found:

> "After reviewing the Amended Complaint, the Summary Judgment Motions and briefs, and the *Cammacho* Motion and briefs, the Court finds that the Amended Complaint did not sufficiently plead the theory that the City's *Reporting Ordinance* required the City to adjudicate cell phone violations in Circuit Court. This is a new theory that cannot now serve as the basis for Plaintiffs' recovery under the Summary Judgment Motions

15

as supplemented by the *Cammacho* Motion. The only theory properly pleaded is that Division 2.1 [of the Illinois Vehicle Code] deprived the City's Department of Administrative Hearings of jurisdiction. Plaintiffs conceded, based on *Cammacho*, that they cannot prevail on this theory."

¶ 41    "Based on the Amended Complaint as it now stands," the circuit court denied plaintiffs' motion for summary judgment, finding that the state statute was not jurisdictional. For the same reason, the circuit court granted the City's cross-motion for summary judgment and dismissed the amended complaint with prejudice. The circuit court also denied the City's motion for summary determination as to its counterclaims and granted plaintiffs' cross-motion for summary judgment on the counterclaims, as no award to the City was warranted where plaintiffs did not prevail on their unjust enrichment claims.

¶ 42    The circuit court then considered whether plaintiffs should be permitted to amend their complaint. The circuit court concluded:

>    "Here, even if the proposed amendment could cure the defective pleading, the other factors weigh against allowing amendment. This case has been pending for over seven years. Throughout that time, the parties litigated the issue of whether or not state law—not a municipal ordinance—deprived the City of jurisdiction. Switching theories at this late stage would be prejudicial to the City, particularly since Plaintiffs knew about and could have pleaded their alternative theory from the start. The proposed amendment is not timely, and Plaintiffs had ample opportunities to amend. The Motion to Amend is denied."

¶ 43    This appeal follows.

¶ 44                                                    ANALYSIS

¶ 45        On appeal, plaintiffs contend that the circuit court erred in not permitting them to raise their jurisdictional argument based on the Chicago Municipal Code. Plaintiffs further maintain that state law preempts the City's authority to administratively adjudicate the ordinance violations. Finally, plaintiffs raise several arguments concerning the viability of their pre-2014 claims. We consider each argument in turn.

¶ 46                              *Ordinance-Based Jurisdictional Argument*

¶ 47        Plaintiffs first claim that the circuit court erred in not considering their ordinance-based jurisdictional argument where (1) it had been previously raised in their amended complaint and (2) even if it was not, amendment of the complaint should have been granted.

¶ 48                                        Amended Complaint

¶ 49        We first consider whether, as plaintiffs contend, their amended complaint alleged a jurisdictional claim based on the municipal ordinance. "Pleadings serve to inform the court and the parties of the legal theories relied upon and to give notice of the factual issues which are to be tried." *People v. $1,124,905 U.S. Currency*, 177 Ill. 2d 314, 335 (1997) (citing *Yeates v. Daily*, 13 Ill. 2d 510, 514 (1958)). They are to be liberally construed with a view to doing justice between the parties, and " '[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet.' " *Id.* (quoting 735 ILCS 5/2-612(b) (West 1994)).

¶ 50        In this case, we agree with the circuit court that plaintiffs' amended complaint did not allege a jurisdictional claim based on section 9-76-230(d) of the Chicago Municipal Code. The sole reference to that ordinance is in the "factual allegations" section of the amended complaint, in which plaintiffs alleged that "[i]t is clear that the City knew full well that the law

17

required 'reportable' Ordinance violations to be tried in an Illinois circuit court rather than the City's private administrative courts," pointing to section 9-76-230(d). This discussion, however, occurs in the context of plaintiffs' arguments about the *state* statutory scheme. Immediately preceding the reference to the Chicago Municipal Code, the amended complaint alleges that "the three parts of Illinois's statutory scheme are clear": (1) section 12-610.2 of the Illinois Vehicle Code makes distracted driving illegal throughout the state, (2) section 6-204 of the Illinois Vehicle Code requires reporting of violations of the distracted driving statute and "similar" municipal ordinances to the Secretary of State, and (3) section 1-2.1-2 of the Illinois Municipal Code "forbids" municipalities from adjudicating reportable offenses. The amended complaint alleges that, "[b]ecause the Ordinance is similar to the Statute, and the Statute is a reportable offense, the Ordinance must be adjudicated by circuit courts equipped to make reports to the Secretary of State. Therefore, Illinois law forbade the City from adjudicating alleged Ordinance violations in its administrative courts." The amended complaint then alleges that "[t]he City purposefully circumvented this statutory scheme in order to maximize revenue," despite being aware of its requirements. This in no way can be read as raising an independent claim that section 9-76-230(d) of the Chicago Municipal Code provides a basis for plaintiffs' jurisdictional claims—the context of the reference makes clear that the argument being raised concerns the state statutory scheme. The municipal ordinance is solely being cited as evidence of the City's knowledge of the state requirements.

¶ 51 We similarly reject plaintiffs' suggestion that their allegations that the City's municipal code deprived the DOAH of jurisdiction encompassed their current claim concerning section 9-76-230(d). The "factual allegations" of the amended complaint included a section titled "Even if the Ordinance is not a moving violation, the City never followed the requirements for

administratively adjudicating alleged Ordinance violations set out in state law and the City's own municipal code." In this section, the amended complaint pointed to four ordinances with which the City allegedly failed to comply by (1) adjudicating the violations in the incorrect division of the DOAH, (2) failing to send second violation notices, (3) failing to list license plate numbers on each violation notice, and (4) imposing fines for violations which exceeded the amount allowed by state law. The amended complaint alleged that, as a result of the City's failure to comply with these ordinances, "even if it were true that the Ordinance was a compliance violation related to 'equipment on a vehicle,' the City's adjudication[s] of Plaintiffs' alleged offenses were unlawful and void *ab initio*."

¶ 52     The amended complaint concluded its "factual allegations" by alleging that the DOAH lacked jurisdiction over plaintiffs' alleged ordinance violations, as (1) Illinois law forbade the City from adjudicating such violations in its administrative system and (2) "the City violated provisions of state law and its own municipal code concerning the manner in which Ordinance offenses must be adjudicated." The amended complaint alleged that "[t]hus, even if the City's private courts did have jurisdiction to adjudicate Ordinance offenses, the City's critical failures deprived those courts of that jurisdiction. For this additional and independent reason, the City's private courts acted illegally each time they entered judgment against an alleged Ordinance violator, accepted a plea of guilty, collected monies, or otherwise adjudicated an alleged violation of the Ordinance."

¶ 53     It is clear based on the context of the entire amended complaint that the reference to violations of "its own municipal code" referred to the allegations that the City violated the previously enumerated municipal ordinances governing the manner of adjudicating the ordinance violations—allegations which were set forth in considerable detail in a separate

section of the amended complaint, and allegations that were the express basis for a combined 16 counts of the amended complaint. There is simply no reasonable reading of the amended complaint that encompasses a violation of section 9-76-230(d) as an independent basis for plaintiffs' jurisdictional claim.

¶ 54     We also find unpersuasive plaintiffs' contention that the import of section 9-76-230(d) was "a live issue at summary judgment" and was the subject of extensive briefing post-*Cammacho*. We first observe that the briefing after the issuance of *Cammacho* has no bearing on whether the matter was adequately alleged in the amended complaint, as a significant portion of the *Cammacho* decision concerned Joliet's municipal ordinance, leading naturally to a discussion of the City's municipal ordinance. Additionally, we are hard-pressed to describe section 9-76-230(d) as a "live issue" during the summary judgment proceedings. In plaintiffs' motion for summary judgment, the ordinance was mentioned in the same way it had been in the amended complaint—as evidence of the City's knowledge of the reporting requirement. Indeed, plaintiffs' discussion of the ordinance is located in a section titled "The City's efforts to cover up its unlawful conduct."

¶ 55     The first instance in which section 9-76-230(d) is raised as an independent basis for plaintiffs' jurisdictional claim is in plaintiffs' response to the City's cross-motion for summary judgment, where plaintiffs included a two-paragraph subsection titled "The City's own municipal code prohibits the administrative adjudication of moving or reportable violations."[8] Plaintiffs argued that section 1-2.1-1 of the Illinois Municipal Code prohibited home rule units from administratively adjudicating moving or reportable violations, then added: "Furthermore,

_____

[8]For context, the entirety of plaintiffs' response to the City's cross-motion for summary judgment comprised 42 pages.

during the relevant time period, the City's cell phone ordinance provided that violations could not be administratively adjudicated if they were subject to the reporting requirements of Section 6-204, which they clearly and unambiguously were," quoting section 9-76-230(d) of the Chicago Municipal Code. Plaintiffs claimed:

> "Because the state cell phone statute was an offense under the Vehicle Code—and because the City's cell phone ordinance was similar to the state statute since at least 2014—the City's own municipal code prohibited it from administratively adjudicating that offense, even if it did not constitute a moving violation. In the end, even if the City is correct that state law poses no barrier to DOAH's ability to administratively adjudicate moving or reportable violations (it is not), its own municipal code prohibited it from doing so."

¶ 56    In its reply, the City claimed that "[t]his argument, made in passing, does not bear on home rule preemption." The City further contended that, while plaintiffs had "neither pleaded nor developed a claim that a City ordinance barred the City from sending their tickets to DOAH, it is foreclosed by binding precedent in any event," then cited a case concerning the presumption that procedural commands to City officials are presumed to be merely directory, not mandatory. The matter was only briefly raised during the hearing on the cross-motions for summary judgment, with plaintiffs' counsel noting in response to the City's home rule arguments that the ordinance "goes to show that the City knew what was going on." Counsel continued:

> "It also—it also, by the way—setting aside state law, *** the City's own municipal ordinance says—they're prohibited under their own municipal ordinance from administratively adjudicating cell phone violations if they're reportable."

¶ 57     Given the limited treatment of the issue during summary judgment proceedings, we cannot find that the import of section 9-76-230(d) was a "live issue" throughout the case. Indeed, the City's reply to plaintiffs' raising the matter—that the issue had not been previously pleaded or developed—suggests the opposite. Accordingly, we agree with the circuit court that section 9-76-230(d) was not pleaded as a basis for plaintiffs' jurisdictional argument in their amended complaint.

¶ 58     We also find no merit to plaintiffs' suggestion that, even if the ordinance was not raised in the amended complaint, it was properly before the court since it did not represent a new theory of recovery. "A plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in his complaint." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994). As such, a plaintiff may not raise new issues not pleaded in his complaint to support or defeat a motion for summary judgment. *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 36. Some courts, however, have permitted a plaintiff to raise a matter for the first time in connection with summary judgment proceedings where the new matter represents a new basis for a previously pled theory of recovery. See, *e.g.*, *Feliciano v. Geneva Terrace Estates Homeowners Ass'n*, 2014 IL App (1st) 130269, ¶ 34 (where the complaint alleged breach of fiduciary duty, additional basis for alleging breach of fiduciary duty was proper); *BCSP 330 North Wabash Property LLC v. 401 NSS, LLC*, 2024 IL App (1st) 230542-U, ¶ 38 (where complaint alleged mistake, additional basis for alleging mistake was proper). But see, *e.g.*, *800 South Wells Commercial LLC v. Cadden*, 2018 IL App (1st) 162882, ¶ 44 (where complaint alleged breach of fiduciary duty based on the defendant's status as a corporate officer, argument claiming breach of fiduciary duty based on managerial control was not properly raised). Here, plaintiffs contend that section 9-76-230(d) represented a new basis for

their previously pled theory that the DOAH lacked jurisdiction to administratively adjudicate the ordinance violations at issue. Plaintiffs suggest that, "[w]hether Plaintiffs' citations are void due to [section 1-2.1-2 of the Illinois Municipal Code] or [section 9-76-230(d) of the Chicago Municipal Code], the fundamental claim is the same." We cannot agree.

¶ 59       In a different context, our supreme court has explained that a "theory of recovery" is not synonymous with a "claim" or "cause of action." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 25. A single cause of action may give rise to several theories of recovery, and, conversely, a theory of recovery is not a cause of action or claim. *Id.* Here, the counts for declaratory judgment and unjust enrichment in plaintiffs' amended complaint are based on a theory of recovery grounded in state law. Their arguments concerning the municipal ordinance would therefore represent a separate theory of recovery—a separate legal source for their claims.

¶ 60       As plaintiffs themselves recognize, "the jurisdictional question here is purely legal." Plaintiffs are not seeking to rely on an additional factual basis to support a previously pled legal theory of recovery. Instead, they are seeking to rely on an entirely different law. While the result they are seeking remains the same, and there is admittedly substantial overlap between the theories, the legal underpinnings of their contentions are distinct. This distinguishes plaintiffs' cited cases, which largely concerned additional *factual* arguments, not new legal theories.[9]

¶ 61       Notably, plaintiffs themselves used this approach in their amended complaint. Seven of their counts allege that the DOAH's findings of liability for violations of the ordinance are

---

[9]The exception is plaintiffs' citation of *Mentesana v. LaFranco*, 73 Ill. App. 3d 204, 208 (1979), which permitted the plaintiff for the first time on appeal to argue a claim for " 'active negligence' " against the defendant landowner, despite the fact that the complaint did not allege such a claim. The appellate court in that case found that "it would not be consistent with justice for us to ignore the plaintiff's real claim," albeit improperly pleaded, where the defendant was aware at all times that the plaintiff was seeking to recover from slipping on ice on the defendant's property. *Id.*

void. In addition to their argument concerning state law, plaintiffs' amended complaint specifically alleges that the DOAH was deprived of jurisdiction to adjudicate the violations where (1) they were adjudicated in the wrong division, (2) the City failed to send out second notices of violation, (3) the City failed to include license plate information on the notices, and (4) the schedule of fines exceeded what was permissible under state law. Despite the fact that all of these counts seek the same result—a declaration that the DOAH lacked jurisdiction and the resultant findings were void *ab initio*—plaintiffs appropriately pleaded each separately. Each law that plaintiffs relied on in support of their claims gave rise to a distinct legal theory that was set forth in a separate count of the complaint. This highlights that what plaintiffs now seek to do—add a new law in support of their jurisdictional arguments—represents an impermissible new theory of recovery, not an additional basis to an already-pleaded theory of recovery. Accordingly, we agree with the circuit court that plaintiff's jurisdictional argument based on section 9-76-230(d) of the Chicago Municipal Code was not pleaded in plaintiffs' amended complaint and could not be considered as part of the summary judgment proceedings.

¶ 62                                    Amendment of Complaint

¶ 63        Even if their ordinance-based jurisdictional claim was not previously pled in their complaint, plaintiffs argue in the alternative that the circuit court should have granted their motion to amend their complaint to include such a claim. Where the evidence supports a right of recovery on an unpled claim or theory, "a plaintiff's remedy in such a circumstance is to move to file an amended complaint." *Pagano*, 257 Ill. App. 3d at 911; *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008) ("If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint."). Here, prior to the circuit court's ruling on the cross-motions for summary judgment, plaintiffs

followed this course of action, seeking leave to file a second amended complaint to specifically cite section 9-76-230(d) as a basis for its jurisdictional claims. The circuit court, however, denied plaintiffs' motion.

¶ 64    The decision as to whether to permit amendment of pleadings is within the discretion of the circuit court, and we will not reverse its decision absent an abuse of that discretion. *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 374 Ill. App. 3d 918, 936 (2007). In determining whether to grant leave to amend, a court should consider four factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleadings could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 65    In this case, the circuit court found that the latter three factors weighed against allowing amendment. Specifically, the circuit court found that the case had been pending for seven years, during which time the parties litigated the issue of whether state law deprived the City of jurisdiction. The circuit court found that "[s]witching theories at this late stage would be prejudicial to the City, particularly since Plaintiffs knew about and could have pleaded their alternative theory from the start." The circuit court determined that "[t]he proposed amendment is not timely, and Plaintiffs had ample opportunity to amend," and accordingly denied plaintiffs' motion.

¶ 66    We agree with plaintiffs that, under the circumstances of this case, the circuit court should have granted them leave to amend their complaint. While the circuit court appears to have focused on the length of time of the litigation, it did not explain its findings as to how the City would have been prejudiced by allowing amendment, nor did it elaborate as to its finding that

"Plaintiffs knew about and could have pleaded their alternative theory from the start." We further observe that, while the litigation has been ongoing for a number of years, the passage of time is slightly misleading, as the focus of the parties' arguments shifted substantially over that time. From the time that plaintiffs filed their amended complaint in December 2017 through the time that we reversed the circuit court's grant of summary judgment in September 2022, the parties' jurisdictional arguments focused on two matters: (1) whether plaintiffs had standing to raise their jurisdictional claims and (2) whether violations of section 9-76-230 of the Chicago Municipal Code fell within the scope of section 1-2.1-2 of the Illinois Municipal Code. It was only in August 2023, when the City filed its cross-motion for summary judgment following remand, that the parties substantively addressed the question of whether the state statute preempted the City's home rule authority.[10] Notably, when they did so, they acknowledged that appellate court authority—which the circuit court was bound to follow and which plaintiffs had consistently relied on since 2018—had already determined the question. See *Catom Trucking, Inc. v. City of Chicago*, 2011 IL App (1st) 101146, *overruled by Cammacho*, 2024 IL 129263; *Cammacho v. City of Joliet*, 2022 IL App (3d) 210591, *aff'd in part and vacated in part by Cammacho*, 2024 IL 129263; see also *People v. Buckley*, 2022 IL App (1st) 191391-U, ¶ 81 (observing that "[o]ur courts have repeatedly interpreted [section 1-2.1-2] to prohibit 'the administrative adjudication of moving violations' "). Upon the supreme court's reversal of that appellate court authority, plaintiff sought—the same day as the issuance of that decision—to shift their focus to the municipal ordinance. When the City objected,

[10]Prior to that point, the City had not conceded the matter but instead argued that, even if it was construed as a limitation on home rule authority, it should still prevail where the ordinance did not fall within the scope of the state statute.

26

contending that plaintiffs should not be allowed to do so, plaintiffs filed a formal motion to amend their complaint less than a month later.

¶ 67     We also observe that the approach taken by the supreme court in *Cammacho* in focusing on the municipal ordinance appears to have been relatively novel—it was not raised in either the circuit court or appellate court, and the parties in the instant appeal have cited no cases in which a court had previously taken a similar approach. Thus, while plaintiffs were certainly aware of the existence of section 9-76-230(d), we cannot fault them for not having included the ordinance as an independent source for their jurisdictional claim. Instead, we find more relevant the fact that, immediately after the supreme court issued its decision, plaintiffs sought to add it to their case.

¶ 68     Finally, we cannot find that the City would be prejudiced by permitting the amendment. "Prejudice to the party opposing an amendment is the most important of the *Loyola* factors, and substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant." (Internal quotation marks omitted.) *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525 (2007). The fact that an amendment may result in a change of legal theory does not, itself, establish prejudice. See, *e.g.*, *Giacalone v. Chicago Park District*, 231 Ill. App. 3d 639, 644-45 (1992); *Zook v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 157, 167 (1994); see also 735 ILCS 5/2-616(a) (West 2024) (permitting amendments "changing the cause of action or defense or adding new causes of action or defenses"). Here, as both parties acknowledge, the impact of section 9-76-230(d) has already been at least somewhat addressed by the parties after issuance of the supreme court's decision. Additionally, as the new matter is a legal issue, it requires no further discovery or other factfinding. Indeed, the parties have already been litigating the fundamental issue—whether the DOAH had jurisdiction to administratively

adjudicate the ordinance violations. It is only the source of that theory that is changing under the proposed amendment, as the reporting requirement appears under both the state statute and the municipal ordinance. See *Hazelwood v. Illinois Central Gulf R.R.*, 114 Ill. App. 3d 703, 709 (1983) (finding amendment not to be prejudicial where it "only changed the source of the standard"). Instead, denying plaintiffs an opportunity to include a legal theory that had only recently been approved by any court would serve to prejudice plaintiffs, while any surprise or prejudice to the City comes directly from the fact that the supreme court decision was issued during the pendency of the instant litigation—not from any delay or wrongdoing from the plaintiffs. See *Loyola Academy*, 146 Ill. 2d at 272-73 (amendment should be allowed if it will further the ends of justice). In similar circumstances, our courts have regularly allowed amendment to address recent supreme court decisions. See, *e.g.*, *Miller v. Gupta*, 174 Ill. 2d 120, 129 (1996) (appellate court properly allowed opportunity to amend to conform with recent supreme court decision); *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 5 (observing that circuit court granted motion for leave to amend complaint after a supreme court decision issued during pendency of proceedings); *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 797 (2009) (same). Accordingly, we find that the circuit court abused its discretion in denying plaintiffs leave to amend their complaint.

¶ 69    We find unpersuasive the City's suggestion that amendment was properly denied where their claim would fail on the merits, as "it is never an abuse of discretion to deny leave to amend when the proposed amendment would be futile" (*Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893, ¶ 40). Here, it is not clear that plaintiffs' argument would be futile, especially given the supreme court's decision in *Cammacho*. At a minimum, plaintiffs have nonfrivolous arguments concerning the interpretation of the Chicago Municipal

28

Code in light of the supreme court's treatment of the Joliet ordinances. While we express no opinion as to the ultimate likelihood of success on remand, we find that, under the circumstances of the case before us, plaintiffs should have been permitted to amend their complaint to include their ordinance-based jurisdictional argument. Consequently, we remand the matter to the circuit court with directions to permit plaintiffs to amend counts III and IV of their complaint accordingly.

¶ 70                                    *Home Rule Preemption*

¶ 71        Plaintiffs next ask us to direct the circuit court to enter summary judgment in their favor "on the basis that the City's home rule power to administratively adjudicate reportable traffic offenses is impliedly preempted." This argument was not raised below and is raised for the first time on appeal. It is well settled that "[a] party 'cannot properly raise a new theory for recovery for the first time on appeal.' " *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 88 (quoting *Federal Insurance Co. v. Turner Construction Co.*, 277 Ill. App. 3d 262, 268 (1995)). Consequently, plaintiffs' argument has been forfeited. Moreover, even if not forfeited, plaintiffs' argument concerns counts III and IV of the amended complaint, which we have remanded to the circuit court for amendment in accordance with this decision. As such, we have no need to further address plaintiffs' arguments on this issue.

¶ 72                                      *Pre-2014 Violations*

¶ 73        Finally, plaintiffs raise two issues concerning pre-2014 violations, which we previously found the DOAH had the authority to adjudicate. See *Potek*, 2022 IL App (1st) 211286, ¶ 51 (affirming circuit court's grant of summary judgment in favor of the City with respect to violations prior to January 1, 2014). Plaintiffs contend that our decision in the prior appeal was incorrect, based on the *Cammacho* court's analysis concerning the issue of "similarity," which

served as the basis for our prior decision. Accordingly, plaintiffs ask us to "reconsider [our] prior holding on 'similarity' in *Potek* and find that the pre-2014 statute is similar to the ordinance for purposes of reporting under section 2-604." This we will not do.

¶ 74　　　　Our prior decision represents the law of the case on the matter. The law-of-the-case doctrine bars relitigation of an issue previously decided in the same case, whether it is an issue of law or an issue of fact. *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8. "The law-of-the-case doctrine protects the parties' settled expectations, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings litigation to an end." *Id.* There are two exceptions to this doctrine: (1) where "a higher reviewing court makes a contrary ruling on the same issue subsequent to the lower court's decision," or (2) where "a reviewing court finds that its prior decision was palpably erroneous." *Id.* ¶ 10.

¶ 75　　　　Plaintiffs contend that the *Cammacho* court's analysis on the issue of "similarity" renders our previous finding on the issue "no longer tenable" such that the first exception to the law-of-the-case doctrine applies. We disagree. *Cammacho* did not "make[ ] a contrary ruling *on the same issue*" (emphasis added) (*id.*), as required for the exception to apply. *Cammacho* did not address the municipal ordinances at issue in this case at all, much less consider whether they were similar to provisions of the Illinois Vehicle Code. Indeed, the ordinances at issue in that case concerned the regulation of the length and weight of vehicles, not cell phone use. See *Cammacho*, 2024 IL 129263, ¶ 49. We further observe that our prior decision had been filed approximately 19 months prior to the supreme court's decision in *Cammacho*, and that the City of Joliet's petition for leave to appeal and its supporting brief before the supreme court both cited our decision, meaning that the supreme court would have been well aware of our earlier

decision. Its decision in *Cammacho* nevertheless did not include any discussion of our prior decision or the analysis contained therein. Thus, where *Cammacho* did not concern the ordinances at issue here or refer to our prior decision at all, reading the *Cammacho* decision as representing an exception to the law-of-the-case doctrine is unwarranted.

¶ 76   We also note that plaintiffs' argument places great weight on the fact that our analysis on similarity cited *Catom Trucking*, which was overruled by the supreme court in *Cammacho*. Plaintiffs, however, overlook that the parties themselves discussed *Catom Trucking* in their appellate briefs and that our analysis of the issue did not, in fact, rely on the case. Indeed, in discussing the parties' citation of *Catom Trucking*, we observed in our prior decision that "the only case cited by the parties merely recites the applicable provisions at issue and declares them 'similar.' " *Potek*, 2022 IL App (1st) 211286, ¶ 46 (citing *Catom Trucking*, 2011 IL App (1st) 101146, ¶¶ 13-14). While we did recognize that *Catom Trucking* indicated that the laws must be similar, not identical (*id.*), and accepted that court's suggestion that the legislature had limited the City's authority to administratively adjudicate certain ordinance violations (*id.* ¶ 51), we did not rely on the case in finding the municipal ordinance here to be dissimilar from the state statute. Instead, we conducted an independent analysis, which was based on the language of the laws at issue, the legislative history of the state statute, and the narrow interpretation on limits on home rule authority. Although the supreme court's decision in *Cammacho* clarified that section 1-2.1-2 of the Illinois Vehicle Code did not represent a limitation on home rule authority, such a decision does not negate the remainder of our analysis. While plaintiffs may disagree with that analysis, it nevertheless remains the law of the case and we therefore decline to "reconsider [our] prior holding on 'similarity' in *Potek*."

¶ 77    We similarly reject plaintiffs' alternate suggestion that we order the circuit court to reinstate the counts that were based on the City's alleged failure to comply with state requirements concerning the listing of license plate information on the violation notices.[11] These counts were dismissed in 2018, and plaintiffs did not appeal their dismissal at the time or during the first appeal. We will therefore not consider them for the first time on this appeal.

¶ 78                                        CONCLUSION

¶ 79    For the reasons set forth above, the circuit court's denial of plaintiffs' motion for leave to amend counts III and IV of their complaint is reversed. The cause is remanded for further proceedings in accordance with this decision.

¶ 80    Reversed and remanded.

---

[11]Plaintiffs refer to these as "Counts XV-XVII" in the argument and "Counts XVI-XVII" in their prayer for relief.

***Potek v. City of Chicago*, 2026 IL App (1st) 250158**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CH-10507; the Hon. Pamela McLean Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Jacie C. Zolna and Benjamin R. Swetland, of Zolna Swetland, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, Stephen G. Collins, and Alexandra Weiss, of City of Chicago Law Department), for appellee. |