NOTICE
Decision filed 06/10/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250531-U

NO. 5-25-0531

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-CF-406 |
| | ) | |
| DAREONDAY STACKER, | ) | Honorable |
| | ) | Mark S. Goodwin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Presiding Justice Cates and Justice Boie concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirm the circuit court's denial of the defendant's request that his sentences be "corrected," because the defendant has not provided a sufficient record to support his claim that his sentences do not conform to the terms of his plea agreements.

¶ 2 The defendant, Dareonday Stacker, is serving concurrent sentences in the Illinois Department of Corrections (IDOC) in this case from Vermilion County and in case No. 22-CF-519 from Macon County. He appeals the June 12, 2025, order of the circuit court of Vermilion County that denied his request that his sentences be corrected. For the reasons that follow, we affirm.

¶ 3 I. BACKGROUND

¶ 4 On July 15, 2021, the defendant was charged in this case in a five-count information. Count I alleged that on or about July 12, 2021, the defendant "knowingly possessed with the intent to

1

deliver more than one gram, but not more than 15 grams of a substance containing cocaine, a controlled substance," and that by so doing, committed the offense of possession of a controlled substance with intent to deliver, a Class 1 felony, in violation of section 401(c) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(c) (West 2020)). Count II alleged that on or about July 12, 2021, the defendant "knowingly possessed a substance containing cocaine, a controlled substance," and that by so doing, committed the offense of possession of a controlled substance, a Class 4 felony, in violation of section 402(c) of the Act (*id.* § 402(c)). Count III alleged that on or about July 12, 2021, the defendant, while knowingly driving "a motor vehicle, fled or attempted to elude a police officer *** and the flight or attempt to elude involved damage in excess of $300 to property *** being a retaining wall," and that by so doing, the defendant committed the offense of aggravated fleeing or attempting to elude a peace officer, a Class 4 felony, in violation of section 11-204.1(a)(3) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-204.1(a)(3) (West 2020)). Count IV alleged that on or about July 12, 2021, the defendant committed the offense of aggravated fleeing or attempting to elude a police officer, a Class 4 felony, this time because the defendant's "flight or attempt to elude involved disobedience of two or more official traffic control devices, in violation of" section 11-204.1(a)(4) of the Code (*id.* § 11-204.1(a)(4)). Count V alleged that on or about July 12, 2021, the defendant "knowingly resisted or obstructed the performance of" a police officer in that the defendant "ran from [the officer] on foot" when the officer was conducting a traffic stop of the defendant, and that by so doing, the defendant committed the offense of resisting or obstructing a peace officer, a Class A misdemeanor, in violation of section 31-1(a) of the Criminal Code of 2012 (720 ILCS 5/31-1(a) (West 2020)). On August 6, 2021, an indictment was filed, alleging the same charges.

2

¶ 5    A docket sheet entry dated December 16, 2024, indicates that on that date, the defendant appeared in the circuit court with counsel and entered a plea of guilty to count I "for 5 years in [IDOC]." The entry states that counts II through V were to be "*nolle pros* pursuant to this plea," and that the plea was accepted, judgment was entered, and a presentence investigation was waived. The entry further states that the case proceeded to sentencing, where the circuit court sentenced the defendant "to 5 years in [IDOC] plus 1 year of Mandatory Supervised Release," with the sentence "to be served at 50%," and the defendant to be "given credit for 100 days served." The entry states that the defendant was "ordered to pay all mandatory fees assessed," was "advised of his appeal rights," and that a mittimus was to issue. Although the docket sheet entry states that a court reporter was present, and lists her name, no report of proceedings from this hearing—or from any other hearing in this case—was included in the certified record on appeal, as discussed in more detail below.

¶ 6    Additional docket sheet entries dated December 16, 2024, indicate that on that date, the following documents were filed: a written jury waiver, a mittimus, and a financial sentencing order. A "disposition" docket sheet entry dated December 16, 2024, indicates that the defendant's IDOC sentence was "5 [years] concurrent," and further indicates a sentence of "Jail 27[ ]Days Concurrent," with "Credit Time Served 27[ ]Days Concurrent." The mittimus filed on December 16, 2024, is included in the record on appeal, and indicates that the 100 days of sentencing credit were for time spent in custody from August 9, 2021, until November 16, 2021. The text of the mittimus states that the sentence in this case was to "be concurrent with the sentence imposed in case number 22CF519 in the Circuit Court of Macon County." However, the box to the left of this text on the mittimus is not marked.

3

¶ 7   On February 5, 2025, the circuit court entered an order correcting the mittimus so that it would reflect that the correct statutory citation for the offense to which the defendant entered his plea of guilty was "720 ILCS 570/401(c)(2)," rather than the erroneous citation on the original mittimus, which was "720 ILCS 470/401(c)."

¶ 8   On May 9, 2025, the circuit clerk file-stamped a handwritten *pro se* letter from the defendant, in which the defendant stated that he was contacting the circuit court to address a "miscalculation" in his sentence. The defendant asserted that he "confirmed" with his attorneys in both this case and in 22-CF-519, and with an assistant state's attorney from Macon County, that he would "agree to a 7 [year] 50% sentence in [22-CF-519 and to] a 5 [year] 50% sentence in [this case,] ran concurrent [with] time credit towards both sentences." He asserted that he also "confirmed" with the foregoing people, and "attempted to" confirm with the judges in both cases when the pleas were presented, that he "was not agreeing to having to do an additional sentence after being in the county (Macon) for [2.5 years]." The defendant further asserted that "[i]t was promised and confirmed to [him] by [his attorneys in both cases, the assistant state's attorney from Macon County, and both judges] that 'the 7 would eat up the 5,' " which he believed meant that he would "only be completing the 7 [year] sentence, a little over a year [at] the time (14 months)." He claimed that his "time" had been "miscalculated or some sort of misunderstanding" because although his sentences were "concurrent," IDOC was "calculating them separately [and] if this had been the understanding [he] would not have agreed to the plea agreements."

¶ 9   The defendant further claimed that at his guilty plea proceeding in Macon County, on September 16, 2024, the defendant "confirmed" with the circuit court on the record—after the court asked if he had been promised anything else or had any questions—"that these cases are ran concurrent [and] they will not be 2 separate sentences." He asserted that the circuit court "informed

4

[him] that this would not be the case," and that if the defendant "had any issues," the defendant could contact the circuit court, which would "fix it." The defendant asserted that at his guilty plea proceedings in this case, on December 16, 2024, the defendant "attempted to confirm" with the circuit court "that an issue like this would not occur," and that if it did occur, the defendant "was not agreeing to do [a] separate sentence." He added that he then asked his counsel, " 'So … this isn't going to be 2 separate sentences, correct,' " and that his counsel responded, " '[N]o … concurrent means … … (explanation) the seven eats up the 5.' " The defendant asserted that he also confirmed with his counsel that his "outdate" would not change, and that when he was assured that it would not, he went forward with his plea agreement in this case. The defendant's letter asked the circuit court to "correct" his sentence, and also alleged that he was entitled to additional credit for time spent in custody prior to his plea agreements.

¶ 10    A docket sheet entry dated May 20, 2025, indicates that the circuit court reviewed the defendant's *pro se* letter, and that "[a]fter consultation with counsel," the circuit court agreed to "enter an Amended Judgment-Sentence to [IDOC] that orders the sentence imposed in [this case] to be served concurrently with the sentence imposed in Macon County Case No 22CF519." The entry stated that "[t]he designation of concurrent sentences was mistakenly left out at the time of imposition of sentence." Also on May 20, 2025, an amended mittimus was filed. The amended mittimus contains an "X" mark in the box to the left of the text that states that the sentence in this case was to "be concurrent with the sentence imposed in case number 22CF519 in the Circuit Court of Macon County." The amended mittimus does not provide any additional credit for time spent in custody prior to the defendant's plea of guilty.

¶ 11    On June 9, 2025, the circuit clerk file-stamped a second handwritten *pro se* letter from the defendant, which was entitled "Request for Sentence Credits." In the letter, the defendant again

asked the circuit court to correct his sentence "to reflect the intended terms" that the defendant agreed to in both cases. He reiterated his contention that this was not what he had agreed to in pleading and reiterated many of the other contentions from his first *pro se* letter as well. He added that he had been told by a counselor at the Jacksonville Correctional Center that because his "sentences were taken on 2 separate dates *** that they are ran concurrent but are calculated separately." He again stated that this was not what he had agreed to. He stated that he had been told "that in order for the terms to reflect the terms originally intended," he needed to request that the circuit court give him credit for "all of the current time [the defendant had] in custody toward [this case] *** including the credit received from Macon [County] (almost 2.5 years) while awaiting trial on both cases." He added that if his sentence could not be corrected, he "would like the liberty to withdraw[ ] [his] guilty plea in" this case.

¶ 12    A docket sheet entry dated June 12, 2025, indicates that the circuit court reviewed the defendant's *pro se* filing. The entry states that the defendant sought "additional sentence credits in this case for time served on another case from Macon County." The entry states that the defendant's request was denied.

¶ 13    On June 24, 2025, the circuit clerk file-stamped a *pro se* motion for order *nunc pro tunc* that was filed by the defendant. Therein, the defendant asked for "980 days credit as time served in this case." He calculated the 980 days as "853 days spent in the Macon County Jail prior to sentencing," which he alleged was from May 4, 2022, until September 16, 2024, plus "127 days from [this case]" which he alleged included "100 days credit given on [December 16, 2024,]" and "27 days credit given [May 20, 2025]."

¶ 14    On July 3, 2025, the defendant filed an additional *pro se* letter, along with a *pro se* notice of appeal that indicated that the defendant wished to appeal the circuit court's June 12, 2025,

6

judgment. In the letter, the defendant stated that he was "not requesting additional time served toward [this case] that [he] received from" the Macon County case, but instead was "requesting for [his] sentence to be altered [and] corrected to reflect the terms" he originally agreed to. The defendant added that he was "retrieving a copy of [his] transcripts [and] statements," which would confirm that he was told that " 'the 7 will eat up the 5.' " He reiterated that he was "now appealing" and would "include proof that these are not the terms" to which he agreed when he entered his guilty pleas.

¶ 15    On July 8, 2025, this court sent a letter to the defendant instructing him to complete the criminal docketing statement that was enclosed with the letter, and to attach to the completed docketing statement "[a] copy of the written request(s) to the Court Reporter(s) asking for preparation of the report(s) of proceeding(s)." The letter stated that the record on appeal was due to be filed in this court on or before September 4, 2025. On August 4, 2025, the defendant filed his docketing statement. Therein, the defendant stated that he had "requested the transcripts from both plea dates," but that because of the approaching due date for the docketing statement, he would "not receive the documents in time to include them in the attachment to the docketing statement." He stated that he had "also requested 'signed' statements [and/or] affidavits from" his defense counsel in each case, as well as from the Macon County assistant state's attorney who was present at his plea in Macon County, "confirming" the defendant's version of the events surrounding the plea agreements and the terms to which he agreed. He indicated on the docketing statement that on July 11, 2025, he had "made a written request to the court reporting personnel to prepare the transcript(s)," and that "[i]n lieu of court reporting personnel's signature [he had] attached the written request to the court reporting personnel to prepare the transcript(s)." Attached to the docketing statement was a three-page handwritten letter that was entitled "Written Request"

7

but that listed no intended recipient. The first one and a half pages of the letter were devoted to the relief the defendant sought on appeal. The second half of page two consisted of the defendant's statement that he was requesting, and had requested, "signed/statements [and/or] affidavits from 'all parties,' " attesting to his version of the events surrounding his guilty pleas. The third page consisted of the defendant's statement that he was requesting, and had requested, transcripts "of both plea dates."

¶ 16     On September 5, 2025, the defendant filed in this court a motion for an extension of time to file his opening brief on appeal. Therein, the defendant stated, "I have my transcripts, affidavits, [and] other important documents to support my case [and] defense." The defendant added that he was afraid the documents would not arrive in this court in time for him to file his brief. This court denied the motion as moot, because the defendant filed his opening brief on September 5, 2025, as well.

¶ 17                                    II. ANALYSIS

¶ 18     We begin by noting that because the defendant filed his notice of appeal prior to the circuit court issuing a ruling on the defendant's motion for order *nunc pro tunc*, and because the defendant specifically stated in that notice that he was appealing the circuit court's order of June 12, 2025, the motion for order *nunc pro tunc* is not properly before this court. We note as well that the defendant attempts to argue for the first time on appeal that he received ineffective assistance of plea counsel, because counsel allegedly failed to move to withdraw the defendant's bond in this case. We agree with the State that it is improper for an appellant to raise a new theory of relief for the first time on appeal (see, *e.g.*, *Potek v. City of Chicago*, 2026 IL App (1st) 250158, ¶ 71), and further agree that the record in this case is not sufficiently developed to support such an argument anyway. See, *e.g.*, *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 127 (when the basis of a

8

defendant's ineffectiveness claim relies on matters not of record, the claim is better brought in a collateral proceeding). Accordingly, we decline to consider the defendant's ineffective assistance of plea counsel claim.

¶ 19    We turn therefore to the arguments that are properly before us. In his *pro se* opening brief on appeal, the defendant repeats, or expands upon, many of the claims he raised in his pleadings in the circuit court. He claims he "originally received 2 'concurrent' sentences" in case Nos. 21-CF-406 and 22-CF-519, and was "told by 'all parties' [defense counsel in his Macon County case, defense counsel in his Vermilion County case, the Macon County State's Attorney's office, and "both judges"] *** that due to the 'concurrent terms' *** these sentences [would] be 'considered' and 'calculated' as 1 sentence," which meant that he "would initially only be serving 'the big number' (7 year sentence at 50%) [and] that the big number [would] 'override' the smaller 5 [year] sentence." He further contends that he "made it clear" he would not agree to two separate sentences, "or separate calculations," and that if he had been informed that his "sentences would be calculated separately by" IDOC, he would not have agreed to enter either plea. The defendant cites cases that he argues entitle him "to enforce the terms of" his plea agreement, and entitle him "to the amount of sentence credit that was promised" to him. In his reply brief, the defendant reiterates his contention that no one informed him that his "sentences would be ran concurrently but calculated separately."

¶ 20    The defendant does not ask on appeal to withdraw his guilty pleas, and does not cite any authority that would support such a request. Instead, his argument is confined to what he contends were the agreed upon terms of his plea agreements. The defendant has attached, as an "Exhibit" to his opening brief, an excerpt from the transcript of his September 16, 2024, disposition hearing in Macon County case No. 22-CF-519, wherein the circuit court told the defendant that the charges

9

in that case and in this case were "concurrent," but that "if for any reason Vermilion County were to seek to make it consecutive, both sides here agree that [the defendant] would be permitted to withdraw his plea."

¶ 21     It is clear from the amended mittimus issued in this case, as well as from the transcript excerpted above, that the sentences in these two cases were intended to be concurrent, and are concurrent. Indeed, the defendant does not dispute that he is in fact serving concurrent sentences. Instead, his contention of error is rooted in his repeated claims that (1) he was "told by 'all parties' [defense counsel in his Macon County case, defense counsel in his Vermilion County case, the Macon County State's Attorney's office, and "both judges"] *** that due to the 'concurrent terms' *** these sentences [would] be 'considered' and 'calculated' as 1 sentence," and (2) he "made it clear" he would not agree to two separate sentences, "or separate calculations." However, contrary to these assertions, the defendant has provided no proof that there were ever any discussions about how the concurrent sentences would be calculated, or that the manner of calculation was a term of either plea agreement. The excerpt from the transcript of the defendant's September 16, 2024, disposition hearing in Macon County case No. 22-CF-519 says no such thing, and the defendant has not provided the complete transcript. He also has not provided the complete transcript—or even a partial transcript—of the December 16, 2024, guilty plea proceedings in this case, or any affidavits (including his own) or other documentation, despite claiming, in his September 5, 2025, motion for an extension of time to file his opening brief, that he had the transcripts and other documentation.

¶ 22     It is the defendant's burden, as the appellant in this case, to provide this reviewing court with a complete record, sufficient to support the defendant's claim of error. See, *e.g.*, *People v. Bell*, 2013 IL App (3d) 120328, ¶ 9. Accordingly, "any doubts that arise from the incompleteness

10

of the record will be resolved against" the defendant. *Id.* In cases in which the issue on appeal relates to the conduct of a hearing or proceeding, but no transcript is available, the appellant must follow the requirements of Illinois Supreme Court Rule 323 (eff. July 1, 2017) and provide a bystander's report or agreed statement of facts. *Id.* ¶ 10. In the absence of transcripts, a bystander's report, or an agreed statement of facts to support an appellant's claim, this court will not presume error, and we will affirm the ruling of the circuit court. *Id.* Because in this case the defendant has provided no support at all for his factual contentions about his agreements to plead guilty, we resolve the incompleteness of the record against him, and we therefore affirm the judgment of the circuit court.

¶ 23                                      III. CONCLUSION

¶ 24     For the foregoing reasons, we affirm the judgment of the circuit court of Vermilion County.


¶ 25     Affirmed.